Richard JOHNSON, Jr., Plaintiff-Appellant,

v.

GEORGIA HIGHWAY EXPRESS, INC., Defendant-Appellee.

No. 26974.

United States Court of Appeals
Fifth Circuit.

Oct. 30, 1969.

Rehearing Denied Dec. 16, 1969.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., Jack Greenberg, New York City, Gabrielle K. McDonald, Houston, Tex., Robert Belton, Gabrielle A. Kirk, New York City, for plaintiff-appellant.

John W. Wilcox, Jr., Wilson, Branch & Wilcox, Alexander E. Wilson III, Charles C. Benedict, Atlanta, Ga., for appellee.

Marian Halley, Atty., Equal Employment Opportunity Commission, Washington, D. C., Daniel Steiner, Gen. Counsel, Russell Specter, Asst. Gen. Counsel, amicus curiae.

Before BROWN, Chief Judge, GODBOLD, Circuit Judge, and CABOT, District Judge.

CABOT, District Judge:

This is an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), from an order dated June 24, 1968, of the United States District Court for the Northern District of Georgia which denied appellant's motion to strike the appellee's demand for a jury trial and holding that appellant could not maintain this suit as a class action until he proved that he had been discharged because of race. Additionally, the order restricted the scope of the class to those persons who had been discharged because of their race. The issues to be decided, therefore, are whether or not the court erred with respect to these holdings.

██ Application of the rule pertaining to class actions is to be considered in the light of the particular circumstances of the case and generally, unless abuse is shown, the trial court's decision as to whether a proper class action has been brought is final. Cypress v. Newport News General and Non-Sectarian Hospital Assn., 4 Cir. 1967, 375 F.2d 648. We hold that such abuse does appear and the trial court must be reversed.

This suit is an employment discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The appellant Johnson was employed by the appellee Georgia Highway Express, an interstate carrier of freight, in the capacity of a "stripper" and "stacker" in the appellee's Atlanta terminal for a number of years. It was alleged that in February of 1966 the company held a meeting with numerous Negro employees for the purpose of affording them an opportunity to present grievances to the company. The appellant, acting as spokesman for the group, inquired of the company how long it would be before Negro employees would be allowed to apply for jobs not then held by members of their race. Several weeks after the meeting appellant was discharged from his job. Appellant asserts that his discharge was racially motivated. The appellee denies that appellant was a spokesman for the group and contends that the appellant was discharged because of his failure to "regularly report to work" and to "regularly report to work on time."

On or about March 31, 1966, appellant filed a charge of racial discrimination with the Equal Employment Opportunities Commission (EEOC) complaining of certain policies and practices of the appellee all in violation of the Civil Rights Act of 1964, *supra*. The Commission notified appellant that while it had found reasonable cause to believe that the practices alleged by him had been committed by the company it had been unable to secure the company's voluntary compliance.

Upon the failure of EEOC to conciliate, the appellant on February 27, 1968, filed this complaint on behalf of himself and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other similarly situated Negroes seeking equal employment opportunities without discrimination on the grounds of race or color. The complaint set forth various acts of discrimination and coupled the same with an assertion of a company-wide policy of discrimination and segregation on the basis of race. The appellant sought to enjoin those practices and sought back pay. The appellee denied the material allegations of the complaint and moved to dismiss on the grounds that

**1124**

the suit was not a proper class action within the meaning of Rule 23 and requested a jury trial on "any issues of fact that may be lawfully tried by a jury." Appellant moved to strike the demand for jury trial. The district court denied the motion to strike and held that the class relief would be limited to persons discharged because of their race and that the suit could not be maintained as a class action until appellant proved that his discharge was for racial reasons and a determination made as to appellant's status in the event he should apply for re-employment.

**I**

■ The first point raised by appellant involves the district court's narrowing of the class, i. e., that the appellant, a discharged Negro employee, could only represent other discharged Negro employees. This was error as it is clear from the pleadings that the scope of appellant's suit is an "across the board" attack on unequal employment practices alleged to have been committed by the appellee pursuant to its policy of racial discrimination. Thus, the following language from a decision of this court, though appearing in a school desegregation case, seems applicable here:

> The peculiar rights of specific individuals were not in controversy. It [the suit] was directed at the system wide policy of racial discrimination. It sought obliteration of that policy of system-wide racial discrimination. In various ways this was sought through suitable declaratory orders and injunctions against any rule, regulation, custom or practice having any such consequence. Potts v. Flax, 5 Cir. 1963, 313 F.2d 284, 289.

While it is true, as the lower court points out, that there are different factual questions with regard to different employees, it is also true that the "Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to all members of the class." Hall v. Werthan Bag Corp., M.D. Tenn.1966, 251 F.Supp. 184. Moreover,

this court, in Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28, a Title VII Civil Rights action, refused to narrow a class based upon reasoning that there are different facts and circumstances involved in employment decisions, jobs, and qualifications. And assuming subsequent intervention after remand, if the lower court feels that it would be too burdensome due to the inapplicability of some issues to other members of the class, resort may be made to the use of sub-classes. See Oatis v. Crown Zellerbach Corp., 5 Cir. 1968, 398 F.2d 496. While the lower court was in doubt as to which class the appellant sought to represent, from the nature of the relief and subsequent briefs, it is obvious that he seeks to represent all Negro employees of the appellee, including discharged employees, as this is the class harmed by the alleged discrimination in hiring, firing, promotion, and maintenance of facilities.

■ In addition to impermissibly narrowing the class, the lower court refused to allow the appellant to represent the class until he proved his own right to relief. What the court held, therefore, was that the appellant was not a proper representative of the class. Two of the prerequisites to a class action are that the claims or defenses of the representative party are typical of the claims or defenses of the class, and that the representative party will fairly and adequately protect the interests of the class. Federal Rules of Civil Procedure, Rule 23 (a) (3), (a) (4).

In this case it is clear that the appellant is a member of the class, i. e., a discharged Negro employee of the appellee, and his claim of racial discrimination is typical of the claims of the class. Whether he will adequately represent the class is a question of fact to be "raised and resolved in the trial court in the usual manner, * * *." Harris v. Palm Springs Alpine Estates, Inc., 9 Cir. 1964, 329 F.2d 909, 913. Therefore, the court below, if it doubted appellant's ability to protect the interests of the class, could have had, and on remand still can have,

an evidentiary hearing on the issue. In this regard the standard to be applied is not whether appellant will prevail, but is as stated by Judge Medina:

> An essential concomitant of adequate representation is that the party's attorney be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class. Eisen v. Carlisle and Jacquelin, 2 Cir. 1968, 391 F.2d 555.

The plaintiff seeks relief against "limiting the use of company maintained facilities on the basis of race or color" but does not describe the facilities or the circumstances surrounding their use. If the defendant is not sufficiently advised of the charges made so as to be able to adequately meet its trial burdens, recourse may be had to a motion for more definite statement and to the various pretrial discovery devices.

The interstate character of defendant's business may well place a heavy management burden on the court, but surely not beyond the resourcefulness of the court to meet. For example, the court could well require appropriate notice to members of the class by letter, poster, etc., even though no notice is specifically required under Rule 23(b) (2), Fed.R. Civ.P., with which we are here concerned.

## II

With regard to the jury question, the court denied the plaintiff's motion to strike defendant's demand for jury trial, holding that all that remained was a claim for back wages, a contract action, to which defendant had the right of trial by jury. This reasoning does not apply in view of our holding that the asserted class relief is proper.

It is clear that the element of back pay is remunerative in nature and is expressly provided for by the Act it-self. 42 U.S.C. § 2000e–5(g). Under that section, if the court finds illegal employment practices, one available remedy is reinstatement with or without back pay. The demand for back pay is not in the nature of a claim for damages, but rather is an integral part of the statutory equitable remedy, to be determined through the exercise of the court's discretion, and not by a jury. Smith v. Hampton Training School for Nurses, 4 Cir. 1966, 360 F.2d 577; Bowe v. Colgate-Palmolive Company, S.D.Ind.1967, 272 F.Supp. 332.

The order of the district court is reversed and the cause remanded for proceedings in accordance with this opinion.

GODBOLD, Circuit Judge (specially concurring):

I concur in the reversal. As I understand it, we are telling the District Court that it defined the class too narrowly and that it must extend the limits outward. We are not, at the appellate level, attempting to stake out precise limits of an appropriate class. That can be done only when there are more precise pleadings, enabling the District Court to equate and balance what the appellant claims are the limits of the class against the tests of adequate representation, protection of the interests of the class, and manageability of the lawsuit.

The burden of telling the District Court enough that it can intelligibly proceed is on the complaining party in the first instance, not upon the court to do so by conducting hearings on adequacy of representation, or upon the defendant to flush out the claims by discovery. The status of the Title VII complainant as a private attorney general does not entitle him to proceed with all cards held to his chest or with no cards at all. The class action is a useful tool or device whose capacities are wide but not without limits.

The District Court was understandably in doubt as to just what class the appellant purported to represent. What is now obvious in this Court is that appel-

lant hopes—and plans—to represent a class as broad as his ingenuity and syntax will allow, subject to whatever boundaries are court-established. The only specific allegations concern appellant's discharge from his position as "stripper," and the failure to promote Negro dock workers to city drivers, both occurring at appellee's Atlanta terminal. Georgia Highway is an interstate motor freight carrier operating in three states, with its principal office and largest terminal in Atlanta, where it allegedly employs over 600 persons. Its total employment is alleged to be more than 1,100 persons. According to the National Motor Carriers' Directory, it has 32 terminals.

Appellant alleges that appellee does not employ Negroes in administrative offices, but whether in Atlanta, elsewhere, or systemwide is not stated. There is an allegation, about as general as language can be made, that the appellee "pursues a policy and condones discrimination or segregation on the basis of race or color." Whether this refers to hiring, promotion, conditions of employment, or use of facilities, all concerned are left to guess. No defendant with a multiplant operation, and employees (some mobile and some fixed) scattered over several states and performing differing duties under presumably differing supervisors, can prepare a defense to this sort of charge. In the instant case over-the-road drivers, who, obviously do not work at the Atlanta terminal, are mentioned for the first time in the prayer for relief. Likewise the prayer asks for an end to unidentified discrimination in the "use of company maintained facilities."

The pleadings structure no class by defined acts, by time, by persons, by plant, by department, by supervisor, or by any other means. The appellant has done no more than name the preserve on which he intends to hunt. Over-technical limitation of classes by the district courts will drain the life out of Title VII, as will unduly narrow scope of relief once discriminatory acts are found. But without reasonable specificity the court cannot define the class, cannot determine whether the representation is adequate, and the employer does not know how to defend. And, what may be most significant, an over-broad framing of the class may be so unfair to the absent members as to approach, if not amount to, deprivation of due process. Envision the hypothetical attorney with a single client, filing a class action to halt all racial discrimination in all the numerous plants and facilities of one of America's mammoth corporations. One act, or a few acts, at one or a few places, can be charged to be part of a practice or policy quickening an injunction against all racial discrimination by the employer at all places. It is tidy, convenient for the courts fearing a flood of Title VII cases, and dandy for the employees if their champion wins. But what of the catastrophic consequences if the plaintiff loses and carries the class down with him, or proves only such limited facts that no practice or policy can be found, leaving him afloat but sinking the class?

In Oatis v. Crown Zellerbach, 398 F. 2d 496 (1968), a single-plant case, plaintiff Hill claimed discrimination in several forms, one being the use of segregated locker rooms. This court allowed Oatis, Johnson and Young to appear as co-plaintiffs because each was employed in a separate and different department of the plant than Hill, but we held these co-plaintiffs "must proceed, however, within the periphery of the issues which Hill could assert," and that if necessary each co-plaintiff could represent a sub-class of persons in his department. *Oatis* represents a rational effort to structure classes and sub-classes based on the claims made as read against the factual context of the lawsuit. Jenkins v. United Gas Corporation, 400 F.2d 28 (1968) is not to the contrary. That case held that the plaintiff's acceptance of a promotion, after he filed a complaint charging specific racial discrimination in promotion and racial discrimination in general did not render the suit moot as to the class. The last paragraph of the opinion recognizes, as we do and as

*Oatis* did, the power and duty to delineate rational classes and sub-classes.

One risk in the Title VII case is the normal reaction of the trial judge to shrink from holding that the single plaintiff, who has sufficient interest and motivation to sue, and his counsel, who has diligence to pursue, do not adequately represent the class, thereby implying possible lack of confidence in them. An additional risk is that of collusive suit at the indirect and undisclosed behest of the employer, giving him the possibility of a whitewash of systemwide employment practices by a judicial inquiry of narrow scope in a forum far distant from numerous employees who may never have heard of the litigation, or, if they have heard, not in such manner as to impel them to grasp hold of the problem and make decisions about it.

Some of the difficulty may be sifted out by findings of the trial court at or during the trial that the plaintiff adequately represents the class. But this issue itself may be determined in the absence of 99.9% of those affected, who have had no notice or service of process or right to be heard and who may feel that the plaintiff in the particular case (or his counsel, or both) is the last person they want representing them.[1]

The broad brush approach of some of the Title VII cases is in sharp contrast to the diligence with which in other areas we carefully protect those whose rights may be affected by litigation. If this were an individual cross-action against an employee at one of appellee's remote terminals we would turn intellectual handsprings over questions of notice and process to him and opportunity to protect his interests—such issues as whether the marshal dropped the notice at the door or handed it to the child at the front gate. But when the problem is multiplied many-fold, counsel, and at times the courts, are moving blithely ahead tacitly assuming all will be well for surely the plaintiff will win and manna will fall on all members of the class. It is not quite that easy.

---

1. Rule 23(b) (2) does not require notice.