**Eva M. AREY, on behalf of herself and others similarly situated, Plaintiff,**

**v.**

**PROVIDENCE HOSPITAL, Defendant.**

**Civ. A. No. 2379–71.**

United States District Court,
District of Columbia,
Civil Division.
April 28, 1972.

Melvin M. Burton, Charles A. Brady, Robert B. Wallace, Washington, D. C., for plaintiffs.

Robert J. Hickey, Washington, D. C., for plaintiff.

FLANNERY, District Judge.

Plaintiff has brought this action on behalf of herself and the class she proposes to represent alleging discriminatory employment practices by defendant, such discrimination being based on both race and sex. Her rights are alleged to arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981.[1] The jurisdiction of this court is founded on § 706 (f) of the Civil Rights Act of 1964, 42

[1] Since this action was filed the laws pertaining to the Equal Employment Opportunity Commission have been amended by the Equal Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103, 92nd Cong. 2nd Sess., March 24, 1972. Although the new law would not be applicable to this case, the substance of the court's opinion would not be altered even if the new law did apply. *See* note 12 *infra* and accompanying text.

U.S.C. § 2000e–5(f) and 28 U.S.C. § 1343. The complaint seeks both injunctive relief and damages. In her amended complaint, plaintiff designates this action as a class action brought on behalf of all black and female employees who have sought, might have sought, seek or might seek, employment and promotion by the defendant and who have been, might have been, continue to be or might be adversely affected because of their race and/or sex by defendant's employment practices. Plaintiff alleges a proper class action under Rule 23(a) and Rule 23(b) (2) F.R.C.P. Plaintiff further alleges that the methods of discrimination include, but are not limited to, intentionally engaging in the discriminatory denial to black employees of initial assignment, promotion or transfer to higher-level, better paid or more desirable job assignments, including supervisory and administrative jobs and the restriction of certain of the lowest paid and least desirable job categories or departments to black employees. Among the alleged policies that contribute to this result are: (1) failure to adequately inform black employees of openings in traditionally white jobs or in more desirable jobs; (2) the defendant's reliance on the subjective discretion of supervisory personnel in the selection of employees for transfer and promotions; (3) the restriction of certain lowest paid and least desirable job categories to black employees; (4) restriction of wage scales for females to a lower level than males of equal organizational rank; (5) reliance on sex-based classified advertising in limited sources to recruit for vacancies. As support for these allegations, plaintiff asserts:

(a) That defendant's policy of discrimination against black employees is evidenced by the fact that in the higher positions of official or manager, defendant has no black males while in the lowest paying classification, service worker, 97 percent of the males are black;

(b) That defendant's discrimination against black employees is further evidenced by the fact that in the highest classification, officials and managers, only 3 percent are black females; of the professionals, only 12 percent are black females; yet in the lowest job classifications, service workers, 75 percent are black females;

(c) That defendant's discrimination against female employees is evidenced by the fact that while defendant's staff is over 80 percent female; only 34 percent of defendant's officials and managers are female. Yet, in the lowest job classification, service worker, 89 percent are female; and

(d) That defendant's discrimination against black applicants is evidenced by the fact that while defendant recruits extensively by classified advertising, it has placed only two classified ads in Washington's black newspaper, the *Afro-American,* and that both such ads were placed after service of plaintiff's charge by the Equal Employment Opportunity Commission (hereinafter referred to as EEOC).[2]

Plaintiff, Arey, is a Negro female citizen of the United States and resident in the District of Columbia who has been employed by Providence Hospital in the Department of Dietetics since April, 1966 to the present (with the exception of a period of approximately ten (10) months between November, 1966 and September, 1967). Plaintiff has held the positions of Therapeutic Dietician (from April, 1966 to November, 1966), Administrative Dietician (from September, 1967 to April, 1969), and Therapeutic Dietician (from June, 1969 to present). Her individual complaint alleges that in April, 1969, the Department was

---

2. Plaintiff also attaches a breakdown of the race, sex and pay range of the seventy-five food service employees, as well as an organizational chart setting out the race, sex, and pay range of other hospital staff.

reorganized at the departure of the religious director and a male Caucasian was hired as Food Production Manager; that the position fell at the same organizational level as plaintiff's (Administrative Dietician) but at a higher salary; that despite plaintiff's superior education, experience and seniority on the job and application for promotion, defendant promoted the Caucasian male to head the Department of Dietetics after only a few months; that on December 11, 1969, plaintiff again applied for the then vacant position of Food Production Manager, but was turned down; that defendant, however, did hire a Caucasian male for the Food Production Manager's job on December 22, 1969, after placing a classified ad in a local newspaper describing the Food Production Manager's position as a male job; that during the reorganization, Providence created new job titles and qualifications to fit the qualifications of two Caucasian males who were hired and placed in positions over plaintiff; that the promotion and hiring of Caucasians into supervisory positions above then employed black personnel was in part responsible for a walkout among service workers in June, 1969; that such practice, moreover, served to limit promotional opportunities for black service workers in the Department; and that such concentration of blacks, both male and female to service positions is not unique to the Department of Dietetics, and the denial of promotion and subsequent demotion of plaintiff is merely a concrete manifestation of defendant's practices in hiring, promotion, and demotion, and terms and conditions of employment that discriminate against blacks and females.

Defendant has presented the court with a motion to determine that the class action should not be maintained under Rule 23(c) (1)[3] and the court will deal only with the issues raised by this motion and specifically will make no judgments on the merits of plaintiff's assertions.

To qualify under Rule 23, a proposed class action must satisfy the requirements of Rule 23(a) and either 23(b) (1), 23(b) (2) or 23(b) (3). As in similar actions brought under Title VII, plaintiff asserts the proposed class qualifies under Rule 23(b) (2).

Rule 23(a) provides:

Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) provides:

Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The class action described by plaintiff appears to satisfy the Rule 23(b) requirement. Moreover, the Rule 23(a) (4) requirement appears to have been met at this juncture.

The questions now before the court are whether the plaintiff has at this

3. Rule 23(c) (1) provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

stage in the proceedings satisfied the requirements of Rule 23(a) (2), (a) (3) and (b) (2). If the requirements have been satisfied, the court must then arrive at appropriate procedures to aid it in administering the course of this action and in setting parameters for the class.

## I

The resolution of the issue of initial compliance with Rule 23 rests on whether the discriminations alleged in the complaint are "manifestations of a broad, sweeping and all-pervasive policy of an imbedded and total racial employment discrimination." Mack v. General Electric Co., 329 F.Supp. 72, 74 (E.D. Pa.1971). Entwined with this issue of class status is the question whether the discriminations alleged by plaintiff on behalf of her proposed class may even be considered by this court in light of statutory provisions relating to exhaustion of remedies. If, in fact, there are categories of discrimination which the court is precluded from hearing, the scope of the class may be diminished at the outset.

In enacting Title VII, Congress created a statutory procedure which depends heavily upon informal methods of conciliation by the Equal Employment Opportunity Commission (EEOC) to treat employment discrimination.[4] Courts have reasoned that Congress intended that the EEOC have a chance to investigate informally and hopefully conciliate discrimination charges thereby establishing a fundamental prerequisite that must be exhausted prior to litigating those charges in Federal Court. That prerequisite is simply the filing of a complaint with the EEOC. *See, e. g.,* Tedford v. Airco Reduction, Inc., 4 E.P.D. ¶ 7654 (5th Cir. Feb. 1, 1972); Dent v. St. Louis & San Francisco Railway Co., 406 F.2d 399, 443 (5th Cir. 1969); Oatis v. Crown

Zellerbach Corp., 398 F.2d 496, 497–498 (5th Cir. 1968).

Defendant raises the question whether issues raised in the EEOC complaint limit the scope of issues that may be raised in an enforcement suit in Federal Court. On May 4, 1969, plaintiff filed charges with the EEOC alleging discrimination on the basis of race and sex in denying her promotion and in demoting her in retaliation for her protesting defendant's discriminatory practices. On July 13, 1969, the EEOC accepted plaintiff's charge as filed. By letter dated November 1, 1971, plaintiff received notification from the EEOC pursuant to Section 706(e)[5] that the EEOC was unable to secure voluntary compliance with the Act and that plaintiff had a right to sue. Plaintiff filed her original complaint with the court on November 22, 1971. The primary distinction between plaintiff's charges as filed with the EEOC and those alleged on behalf of the proposed class is the omission of any reference to discriminatory hiring practices in the charges filed with the EEOC.

In determining whether to allow a party to allege claims not present in his original EEOC complaint, the courts, on one hand, have taken into account that the original complaint is ordinarily filed by "unlettered" laymen who may be ignorant of or unable to appropriately draft the complaint to reflect the complete range of discriminatory practices of which he is a victim either directly or indirectly. King v. Georgia Power Co., 295 F.Supp. 943, 947 (N.D.Ga.1868). As a result, many courts have viewed the factual allegations in EEOC complaints in broad terms in order to effectuate the purposes of the Act. *See, e. g., Tedford, supra;* Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970); Parliament House Motor Hotel v. EEOC, 444 F.2d 1335 (5th Cir. 1971); Jenkins v. United Gas Co., 400 F.2d 28

---

4.  42 U.S.C. § 2000e–5(a) (1964).

5.  42 U.S.C. § 2000e–5(e) (1964).

(5th Cir. 1968). On the other hand, the policies favoring informal persuasion and voluntary compliance would be undermined if parties were given complete freedom to litigate allegations never brought before the EEOC for investigation and conciliation. *See, e. g., Tedford, supra*; Edwards v. North American Rockwell Corp., 291 F.Supp. 199 (C.D.Cal.1968).

The Fifth Circuit in *Sanchez, supra,* adopted a test that would apply to situations where the EEOC complaint and court complaint did not match. The court held that the scope of the allegations that may be litigated in Federal Courts is "limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez, supra* at 466.

▓ Applying the *Sanchez* rule to this case, the question is whether the scope of the EEOC investigation could reasonably be expected to include potential discriminatory hiring policies as well as the discriminatory promotion and transfer policies alleged in the EEOC complaint. In a similar case, Tedford v. Airco Reduction, Inc., *supra,* the court found that the plaintiff could not allege discrimination in the seniority system when he had limited his EEOC complaint to allegations of discriminatory hiring practices. However, this court finds *Tedford* distinguishable. At the time of the filing in *Tedford,* the plaintiff was not an employee of Airco and, therefore, it is reasonable to assume that the EEOC investigated hiring practices across the board but did not at that time look into the seniority system because the complainant had *never* been in a position to experience any discrimination in that sphere of employment. However, here the Plaintiff had been in a position of a job applicant, had been hired, and later found herself in a position as an applicant for promotion.

In her present complaint, she alleges discrimination in both areas while in her EEOC complaint she included the area that, due to its immediacy, was the most vivid in her mind. It seems clear that once having received the complaint of discrimination against complainant the EEOC would as a reasonable matter, extend their investigations to all areas of employment in which the complainant at one time or another had been exposed, including, of course, the facts and circumstances surrounding the initiation of her employment. Accordingly, litigation of the validity of plaintiff's claim as they pertain to defendant's hiring practices is not premature.[6]

Having decided that the court may at least consider allegations of discriminatory hiring policies in addition to promotion practices, it now remains for this court to make some determination regarding plaintiff's compliance with Rule 23(a) (2), (a) (3) and (b) (2). Basic to each of these three requirements is a commonality of claim vis-a-vis both the representative and the class he or she purports to represent, and the court must find this commonality in order to sustain the class.

At the outset the court is concerned about two legitimate and yet somewhat competing policies that encompass the issues now under consideration. On the one hand the court recognizes that actions under Title VII may be "ladened with heavy overtones of public interest" and further that plaintiffs under Title VII, as under the other Titles of the Civil Rights Act of 1964, have been viewed as proceeding as "private attorney generals". Jenkins v. United Gas Corp., 400 F.2d 28, 32–33 (5th Cir. 1968); Bowe v. Colgate Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969). *Cf.* Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L. Ed.2d 1263 (1968). With these thoughts in mind many courts have maintained

---

6. *Compare* Oatis v. Crown Zellerbach Corp., 398 F.2d at 499 (5th Cir. 1968).

a policy of granting plaintiffs wide latitude in their bid to represent a divergent class. Many accept the theory that while there may be different factual questions with regard to different employees, the "Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to all the members of the class." Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn.1966). See, Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124 (5th Cir. 1969).

On the other hand, the court is concerned that a disgruntled employee who happens to be black may discover a weapon of revenge in the form of a major class action suit under Title VII, when the reason for that employee's discontent stems from causes other than race or sex discrimination. The opportunity for harassment of employers abounds regardless of the final outcome of the litigation. Moreover, if the employee lost the suit, he may be preclud-

ing other employees whom he included in the class from instituting legitimate claims in the future. Unfortunately, the screening prerequisites to bringing such an action were not as effective as they might be due to the fact that the EEOC's backlog prevented it from investigating for reasonable cause and seeking conciliation within the sixty-day time limit afforded by Title VII. After that sixty-day period the charging party was allowed to commence his civil suit.[7] Since four or five months may have passed before an investigation for cause began[8] and attempts at conciliation could only have followed a finding of reasonable cause to believe a violation of Title VII had occurred,[9] and since the EEOC took an average of about twenty months to complete the conciliation process,[10] a disgruntled employee could have instituted a wide-ranging, frivolous class action with the concomitant cost and harassment to the employer, before the EEOC had ever found reasonable cause[11] much less initiated informal conciliation.[12]

7. 42 U.S.C. § 2000e–5(e) (1964). Although this section sets a 30-day time limit, the EEOC has extended it to an automatic 60 days because of its heavy caseload. 29 C.F.R. § 1601–25(a) (1970).

8. See, Hearings on Appropriations for 1970 Before the Subcommittee on the Depts. of State, Justice and Commerce, the Judiciary, and Related Agencies of the House Comm. on Appropriations, 91st Cong. 1st Sess. pt. 4, at 384 (1969) (statement of EEOC Chairman Clifford L. Alexander). See also, Coleman, Title VII of the Civil Rights Act: Four Years of Procedural Elucidation, 8 Duquesne L.Rev. 1, 14 (1970); Note, Developments on the Law: Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harvard L.Rev. 1109, 1199–1212 (1971).

9. 42 U.S.C. § 2000e–5(a) (1964).

10. Hearings on S. 2453 Before the Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 91st Cong. 1st Sess. (1969).

11. There are, in fact, some cases which allow a complainant to sue in Federal Court even where the EEOC has made a determination of no cause. See, e. g., Flowers v. Laborers Local 6, 431 F.2d 205 (7th Cir. 1970); Fekete v. United States Steel Corp., 424 F.2d 331 (3rd Cir. 1970); Grimm v. Westinghouse Elec. Corp., 300 F.Supp. 984, 989–90 (N.D. Cal.1969). It would seem that in this situation, the court should abandon the policy of granting plaintiff's wide latitude in their bid for class action status and instead should hold the plaintiffs to a strict and narrow compliance with Rule 23 requirements.

12. Although, on its face, the recent amendments seem to cure this matter, the new law probably will not significantly alter the situation. The new law provides that after the complaint is filed, after the investigation is completed and cause found, and after reconciliation attempts prove unfruitful, the EEOC itself may bring suit. The law further provides that "as far as practicable", the investigation process should not exceed four months. Regardless of

The court, keeping in mind both the policy of lenience in Title VII class status applications due to the public interest in favor of ending discrimination, and the policy scrutinizing such applications in order to guard against potential harassment of employers and infringement of class members' rights through *res judicata*, now must decide if there is sufficient commonality of claim to sustain the class status. While there is a body of Title VII cases which view strictly the commonality requirements set by Rule 23,[13] the majority of cases adopt the view of the Fifth Circuit, perhaps best illustrated by Johnson v. Georgia Highway Express, Inc., *supra*. In *Johnson,* plaintiff alleged that he was discharged because of his race and sought to represent all Negroes seeking employment opportunity with the defendant. The court there found that plaintiff's "across the board" attack on unequal employment practices alleged to have been committed by the appellee pursuant to its policy of racial discrimination satisfied Rule 23's commonality requirements. *See,* Mack v. General Electric Company, *supra;* Tipler v. E. I. duPont de Nemours & Co., 443 F.2d 125 (6th Cir. 1971); Wilson v. Monsanto Co., 315 F.Supp. 977 (E.D.La. 1970); Carr v. Conoco Plastics, 295 F. Supp. 1281, aff'd 423 F.2d 57, cert. den. 400 U.S. 951, 91 S.Ct. 241, 27 L.Ed.2d 257 (1969). Furthermore, in an unreported court order, this court through Judge Waddy sustained a class represented by a Negro man who claimed that he was discharged because he refused transfer from a store in a white neighborhood (where he was the manager) to a store in a black neighborhood. The sustained class consisted of "all Negro employees, all Negro applicants for employment, and all potential Negro employees and applicants for employment at all retail dairy stores operated by defendant in the District of Columbia and surrounding suburbs in Virginia and Maryland," Turner v. High's Dairy, No. 488–71 (D.C.D.C. July 28, 1971), thus lending support to the "across the board" approach.

The court, after due consideration, accepts this approach as the most practicable at this early stage of the litigation recognizing that it is within the power of the court at a later time to limit either issues or parties, Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968). Therefore, the court denies defendant's motion without prejudice and allows the plaintiff to continue as representative of the class action as described in the amended complaint. The court emphasizes that its finding is conditional as provided in Rule 23(c) (1) and voices its concern for the rights of the non-named class members as well as its concern for the defendant's right to be free from frivolous and harassing class litigation. The court heartily endorses the comments of Judge Godbold concurring in Johnson v. Georgia High-

---

what stage the EEOC has reached, six months after the complaint was filed, the potential plaintiff may institute his or her own suit. Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103, § 4(a), 92nd Cong. 2nd Sess., March 24, 1972. Because the time periods between filing of charges and initiation of investigation, between initiation and completion of investigation (through the "as far as practicable" loophole), and between initiation and completion of reconciliation procedures will in all likelihood continue to be characterized by protracted delays at least as long as those delays experienced under the old laws, in many cases a potential plaintiff will still be able to institute his or her suit long before the EEOC has made a finding of cause or begun informal reconciliation proceedings.

13. *See,* Hyatt v. United Aircraft Corp., 50 F.R.D. 242 (Conn.1970); Hackett v. McGuire Bros., Inc., 321 F.Supp. 312 (E.D.Pa.1970), rev'd 445 F.2d 442 (3rd Cir. 1971); Smith v. North American Rockwell Corp, 50 F.R.D. 515 (N.D.Okl. 1970).

way Express, Inc., *supra,* 417 F.2d at 1125–27:

> the status of the Title VII complainant as a private attorney general does not entitle him to proceed with all cards held to his chest or with no cards at all. The class action is a useful tool or device whose capacities are wide but not without limits.

> .    .    .    .    .    .

The broad brush approach of some of the Title VII cases is in sharp contrast to the diligence with which in other areas we carefully protect those whose rights may be affected by litigation. If this were an individual cross-action against an employee at one of appellee's remote terminals we would turn intellectual handsprings over questions of notice and process to him and opportunity to protect his interests—such issues as whether the marshal dropped the notice at the door or handed it to the child at the front gate. But when the problem is multiplied many-fold, counsel, and at times the courts, are moving blithely ahead tacitly assuming all will be well for surely the plaintiff will win and manna will fall on all members of the class. It is not quite that easy.

In this spirit, despite a plethora of facts, figures, charts and diagrams filed by plaintiff in support of her allegations of discrimination, the court feels it can make no further determinations regarding the sufficiency and scope of the class wihout receiving some feedback from the class members themselves. The court believes the time to examine the proper forms of notice and feedback eliciting devices is at this stage of the proceedings.

## II

■  It has been well settled that due process requirements apply to class actions. See, Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Moreover, although Rule 23 only specifically requires notice in 23(b) (3) class actions, cases have held that due process requires notice in actions brought under (b) (1) and (b) (2) also. Eisen v. Carlisle & Jacqueline, 52 F.R.D. 253 (S.D.N.Y. 1971).

■■  One of the primary purposes for the 1966 amendments to Rule 23 was to allow the court more leeway to continually shape the parameters of the class and even to periodically determine whether the class should continue to exist at all, in an effort to assure procedural fairness and to allow the court the opportunity to periodically consider practical aspects of the litigation that might arise.[14] The Drafter's concern is evident primarily in Rule 23(d).[15]  In

---

14. *See,* Notes of Advisory Committee, 39 F.R.D. 106 (1966). For an informative discussion and comparison of Federal equity practice and original Rule 23 with amended Rule 23, *see,* Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 375–400 (1967).

15. Rule 23(d) provides:
    Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be

treating the problems of notice and feedback, the court is concerned primarily with Rule 23(d) (2), which sets out a non-exhaustive list of possible occasions for orders requiring notice to the class.

The question of what type of notice must be given seems easily resolvable. Although Rule 23(c) (2) technically applies only to 23(b) (3) class actions, its requirements of "the best notice practicable under the circumstances" would seem to indicate not only the policy of the drafters vis-a-vis notice in (b) (1) and (b) (2) class actions, but also that which is required by procedural due process. Because plaintiff is aware or can become aware of the whereabouts of at least those members of the described class that remain employed by defendant, those members whose applications for employment recently have either been turned down or are pending, and those members who recently have left the employ of defendant, the best notice practicable can be achieved by direct mail to those individuals. Those class members who are not so employed can be notified by publication. In the interest of expediting this litigation, the court will order that defendant provide the necessary employee lists with any costs for compiling such lists to be born by plaintiff.

The issue of class member affirmative feedback is a more perplexing problem. While there have been cases where non-present class members have been asked to furnish the court with information concerning the circumstances under which their claims arose as well as the amounts of their claim, Korn v. Franchard Corp., 50 F.R.D. 57 (1970); Iowa v. Union Asphalt & Roadoils, Inc., 281 F. Supp. 391, 403–404 (S.D.Iowa 1968), aff'd, 408 F.2d 1171 (8th Cir. 1969); Minnesota v. United States Steel Corp., 44 F.R.D. 559, 577 (D.Minn.1968); Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 459 (E.D.Pa. 1968); Harris v. Jones, 41 F.R.D. 70, 74 (D.Utah 1966),[16] these cases have dealt with stockholder class suits and anti-trust class suits, and there has been no issue of non-present class members affirmative action requirements in Rule 23(b) (2) Title VII cases. Nevertheless, this court believes feedback from the known class members would be instructive and aid the court by providing information as to the scope of the class and the scope and diversity of discrimination claims, thereby allowing the court to rule more intelligently in future determinations regarding the boundaries of the class, the need for sub-classes, or even a re-evaluation of the class status designation itself. In the court's mind, the fact that this action is brought under Title VII and involves individual rights championed in the public interest is supportive of the court's desire for as much information as possible before making rulings affecting these rights. Therefore, the court directs the plaintiffs to include in their notice to known class members a "Proof of Claim" form

amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.

16. The court specifically refrains from delving into the procedural quagmire created by a quite recent case dealing with affirmative action requirements for non-present class members. Brennan v. Midwestern United Life Insurance Co., 450 F.2d 999 (7th Cir. 1971). In *Bren-*

*nan,* the court held that identifiable but absent members of a class who received notice of the pendency of the class action, and who failed to respond thereto, may be subjected to the discovery procedures of the Federal Rules even to the extent of having their claims dismissed with prejudice when they fail to comply with the discovery orders of the court. *See* Note, Civil Procedures: Absentee Class Members Subjected to Discovery and Claims Dismissed for Failure to Respond, 1971 Duke L.J. 1007 (1971). The court has no such discovery motion before it.

which would allow these members an opportunity to set forth their particular claims of discriminatory employment practices and the circumstances surrounding such claims.

The issues arising from the situation where a known member has received notice but has chosen not to return the "Proof of Claim" form are complex. At this stage in the proceedings the court believes to exact some penalty laced with various forms of recovery bars would be counter-productive and therefore deems the best course to be omission of any statements alluding to recovery bars. Korn v. Franchard, 50 F.R.D. 57, 58 (1970).

Therefore, the court orders the parties to submit a proposed Order consistent with this opinion, the order to include a proposed cut-off date, such that if class members left defendant's employ before that date they need not be notified by mail, and exact copies of proposed notice and "Proof of Claim" forms.

So ordered.