Mrs. Louise **TOLBERT**

v.

**WESTERN ELECTRIC COMPANY.**

Barbara E. **WHITE**

v.

**WESTERN ELECTRIC COMPANY.**

**Civ. A. Nos. 14045, 14125.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 24, 1972.

Howard Moore, Jr., George L. Howell, Atlanta, Ga., Jack Greenberg, William L. Robinson, New York City, for plaintiffs.

Harry S. Baxter, Matthew H. Patton, James H. Morgenstern, of Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

These two cases, brought by plaintiffs as class actions, involve charges that defendant has engaged in discriminatory employment practices in violation of 42 U.S.C. § 1981 (1970) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (1970). Jurisdiction is vested in this court under 28 U.S.C. § 1343 (1970) and 42 U.S.C. § 2000e–5(f) (1970) and the matter has been submitted on defendant's motion in each case that the court enter an order directing that neither case may be maintained as a class action. Rule 23(c)(1), Fed.R.Civ.P.

Mrs. Tolbert filed Civil Action No. 14045 on August 7, 1970. She is black and was hired as an engineering associate by defendant in June, 1968. From the time of her employment she was, according to the allegations of her complaint, subjected to acts of harassment, ridicule, humiliation, and embarrassment by her fellow white employees and her white supervisors solely because of her race and sex. These acts were allegedly known to and condoned by defendant. In addition, Mrs. Tolbert charges that defendant afforded her inadequate and insufficient on-the-job training solely because of her race and sex. Mrs. Tolbert filed a charge with the Equal Employment Opportunity Commission ["EEOC"] of discrimination against defendant on July 23, 1969, and on August 29, 1969 she was notified by defendant that she would be discharged effective September 30, 1969. On September 3, 1969 Mrs. Tolbert filed a second charge with the EEOC in which she alleged that the notice of discharge had resulted from her filing the first charge. In due course the EEOC notified Mrs. Tolbert of her right to file suit in this court, and she exercised this right. She seeks an award of back pay, costs, and attorney's fees on her own behalf, and declaratory and injunctive relief on behalf of the class she wishes to represent.

Barbara White filed Civil Action No. 14125 on August 28, 1970 together with another plaintiff who was later dismissed from the case. She is black and was hired as a key punch operator by defendant in October 1965. Allegedly, in January of 1968 and thereafter plaintiff White made repeated requests of defendant for transfer out of her "dead end" job classification to one with promotional possibilities, but these requests were denied. Plaintiff White believed then and believes now that she was denied the opportunity to transfer to a better job classification solely because of her race. She filed a charge of discrimination with the EEOC against defendant in July 1968 and was subsequently notified of her right to file suit in this court, which right she exercised. She seeks an award of back pay, costs, and attorney's fees on her own behalf, and declaratory and injunctive relief on behalf of the class she wishes to represent.

By agreement of counsel and order of this court, the time within which the parties in both cases were to complete all discovery was extended until June 30, 1971. On May 13, 1971, Mrs. Tolbert filed responses to defendant's first set of interrogatories which requested, among other things, that she identify the class members. She listed the names and addresses of five females (including plaintiff White) and four males who "are having problems with defendant arising out of their race and/or sex," and she added that:

"My contention is that if defendant discriminates against its black employees or against its female employees because of race or sex respectively, and I believe it does so discriminate, then the common questions of law and fact set out above apply to all members of the class or classes discrimin-

ated against, i. e., to those who have been subjected, solely because of race or sex, to acts of harassment, ridicule, humiliation and embarrassment designed to adversely affect their status as employees, by and with the knowledge of defendant; or who were not given adequate and sufficient on-the-job training as was given to white male employees, because of race and/or sex; or who were terminated by defendant from its employ solely because of having filed a claim against defendant with the EEOC as a retaliatory measure by defendant."

Plaintiff White filed her responses to defendant's first set of interrogatories on May 17 and, in answer to a similar question, stated:

"I am unable to identify names, addresses and job positions of the other black employees who are affected by each such common question of law and fact. My contention is that if defendant discriminates against its black employees because of their race or color, and I believe that it does so discriminate, then the common questions of law and fact set out above apply to all members of the class (race) who are either discriminated against, or who, are potentially subjected to the same discriminatory acts; i. e., to those who are denied because of their race, the opportunities for transfer and promotion, and for development as an employee to the full extent of their capacities."

Defendant filed its answers to plaintiff Tolbert's first set of interrogatories on June 1, 1971 and, having obtained a stipulation and court order further extending the deadline for response, filed its answers to plaintiff White's first set of interrogatories on July 13, 1971. Among other things, both plaintiffs had asked for detailed lists of defendant's employees, including specifications as to race and sex, and detailed descriptions of various job classifications and employment practices. Defendant's answers were contained in two large, bound volumes which were indexed alphabetically and included roughly 150 to 200 pages of exhibits. They provided information concerning defendant's internal personnel policies and procedures, employee work records, job descriptions, salaries, training records, and transfer and promotion reports. Defendant also made available to both plaintiffs comprehensive records and documents, including payroll rate cards, job cards, weekly lists of change in employees on roll, and lists of minority employees. Neither plaintiff indicated to the court any dissatisfaction with the extent of defendant's answers to these first sets of interrogatories.

On July 13 defendant also filed responses to both plaintiffs' second sets of interrogatories. Defendant provided information concerning salary and compensation procedures and policies, gave the name, address, and race of each person hired for one specific job, and described defendant's actions on plaintiffs' personal requests for job transfers. Again, neither plaintiff objected to the court about the extent of defendant's responses to these interrogatories.

A pre-trial hearing on the class action issue in these cases was held before the court on November 9, 1971. On December 15, 1971, the court entered orders allowing both cases to proceed as class actions until further order. In Civil Action No. 14045 the court decreed that Mrs. Tolbert would represent four sub-classes:

(1) Those employees of defendant who claimed to have been given inadequate training because of their race or sex;

(2) Those employees of defendant who claimed to have been paid at disparately low rates because of their race or sex;

(3) Those employees of defendant who claimed to have been harassed because of their race or sex; and

(4) Those employees of defendant who filed discrimination charges

with the EEOC against defendant and claimed to have been retaliated against by defendant as a result of filing such charges.

In Civil Action No. 14125 the court decreed that plaintiff White would represent all black employees of defendant who claimed they were denied transfers into jobs with promotional opportunities because of their race at defendant's Roswell Road facility in Atlanta. Both orders also directed the two plaintiffs to file a list of defendant's employees who fell within the respective classes.

Plaintiff Tolbert propounded a third set of interrogatories to which defendant filed answers on January 24, 1972. In this set Mrs. Tolbert asked for the name, race, sex, and address, of every employee of defendant who filed a discrimination charge with the EEOC against defendant from January 1, 1968 until November 15, 1971, as well as certain other information about such persons. In addition she requested the same information about employees who complained to defendant during that period of time of discrimination based on either race or sex; harassment, ridicule, humiliation, embarrassment by fellow employees or supervisors; or inadequate and insufficient on-the-job training.

Defendant responded with the names of six employees who filed complaints with the EEOC which were served upon defendant, 15 employees who complained to defendant about discrimination based on either race or sex, and five employees who complained to defendant about acts of harassment. Defendant also supplied the other information Mrs. Tolbert had requested concerning such persons, and offered her access to defendant's computerized alphabetical listing of employees, departmental personnel files, master personnel folders, and computerized personnel records if she believed the answers given were incomplete or insufficient. Mrs. Tolbert did not indicate to the court any dissatisfaction with the extent of defendant's responses to her third set of interrogatories.

Plaintiff White also propounded a third set of interrogatories to which defendant filed answers January 24. She asked for the name, race, and sex of every employee of defendant who notified the company between January 1, 1968 and November 15, 1971 of his or her desire to receive a transfer or promotion within the company, as well as certain other information about those persons and the disposition of their requests. In addition, she asked for the name, race, and sex of every employee who received a transfer or promotion on the company's initiative during that period, as well as other information concerning such persons. Defendant responded with the names of seven persons who requested a transfer or promotion during the period involved, as well as the other requested information concerning these persons, and offered plaintiff White access to the appropriate records for information concerning transfers or promotions initiated by the company. No indication was given to the court by plaintiff White that defendant's responses to her third set of interrogatories were incomplete.

On January 24 plaintiffs Tolbert and White, in compliance with this court's order of December 15, 1971, filed the names and addresses of eleven persons whom each believed "might" be members of the classes enumerated by the court. Eight persons were common to both lists. The two plaintiffs stated that their lists were not all-inclusive, that "there are probably others who plaintiff cannot presently identify," and that they would submit briefs on the numerosity requirement of Rule 23, Fed.R. Civ.P. They both stated that the lists were "based solely upon information solicited from defendant in the form of answers to plaintiff's Third Interrogatories."

Discovery continued for several months thereafter and neither plaintiff

added to or subtracted from her list of class members. In response to defendant's second set of interrogatories both plaintiffs took the position that all the information concerning the discriminatory acts to which the named class members had been subjected was in the possession of defendant and that plaintiffs had no knowledge of such discriminatory acts beyond that furnished by defendant in its answers to plaintiffs' third sets of interrogatories. Defendant then moved to dismiss the two classes on the ground that neither plaintiff had shown that she represented a group of people so numerous as to make their joinder impracticable.

The pertinent part of Rule 23 provides:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class

which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

■■ The burden of satisfying the requirements of Rule 23 falls on those who seek to maintain a class action and it is their obligation to make a positive showing that, among other things, the members of the proposed class are so numerous that their joinder is impracticable. Demarco v. Edens, 390 F.2d 836 (2d Cir. 1968); Neddo v. Housing Authority of City of Milwaukee, 335 F. Supp. 1397 (E.D.Wis.1971); Kinzler v. New York Stock Exchange, 53 F.R.D. 75 (S.D.N.Y.1971); Cannon v. Texas Gulf Sulphur Co., 53 F.R.D. 216 (S.D.N.Y. 1971). While the failure to enumerate and identify class members with precision is not fatal, Price v. Skolnik, 54 F.R.D. 261 (S.D.N.Y.1971); Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., 52 F.R.D. 335 (D.Minn.1971), mere speculation as to the existence of the class is insufficient to comply with Rule 23(a)(1). Kinzler v. New York Stock Exchange, *supra*; Cannon v. Texas Gulf Sulphur Co., *supra*.

In many Title VII cases the allegations involve "across-the-board" discrimination, and it has been held that the wise practice is to allow such cases to proceed, at least at the onset, as class actions. Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969); Arey v. Providence Hospital, 55 F.R.D. 62 (D.D.C.1972); Mack v. General Electric Co., 329 F.Supp. 72 (E.D.

Pa.1971). This court's order of December 15, 1971, permitting the instant cases to proceed as class actions until further order and defining the classes and subclasses, was in line with that practice. However, more than eight months have elapsed since the entry of that order and, despite the abundance of information made available to plaintiffs through the discovery process, neither plaintiff has been able to point to more than eleven persons who might be eligible for membership in the classes delineated by the court.

■ The question of whether a representative party has shown sufficiently that joinder is impracticable is dependent upon the circumstances of the case rather than any arbitrary numerical limit. Demarco v. Edens, *supra;* Forbush v. Wallace, 341 F.Supp. 217 (M.D.Ala. 1971) (three-judge court); Thomas v. Clarke, 54 F.R.D. 245 (D.Minn.1971) (three-judge court). We are, in this Circuit, acutely aware of the reprehensible discrimination in employment which gave rise to the enactment of Title VII and cognizant of the significant role the class action device has played in the effectuation of Title VII remedies. Nevertheless, the class action device may be abused, both in Title VII cases and non-Title VII cases. The purpose of that portion of the court's order of December 15, 1971 which directed both plaintiffs to identify the class members was not merely to ascertain their names and addresses but to establish whether plaintiffs' complaints were unique to themselves or common to many others similarly situated. The court cannot allow a class action where there is no class, even in a Title VII case, and it shares the concern of another court

" . . . [T]hat a disgruntled employee who happens to be black may discover a weapon of revenge in the form of a major class action suit under Title VII, when the reason for that employee's discontent stems from causes other than race or sex discrimination. The opportunity for harassment of employers abounds regardless of the final outcome of the litigation. Moreover, if the employee lost the suit, he may be precluding other employees whom he included in the class from instituting legitimate claims in the future." Arey v. Providence Hospital, *supra,* 55 F.R.D. at 68.

It is not even clear that the eleven persons each plaintiff has listed are members of the classes plaintiffs wish to represent. As the court has already noted, both plaintiffs have indicated they know nothing about the alleged discriminatory actions to which these persons have been subjected beyond the information supplied by defendant in response to plaintiffs' third sets of interrogatories, notwithstanding that plaintiffs were given the full names and addresses of these persons at least seven months ago and that the alleged discriminatory actions are supposed to be the same ones to which plaintiffs have been subjected. While defendant's answers to plaintiffs' third sets of interrogatories suggest the possibility that some of the persons listed by plaintiffs may have suffered the same types of discrimination plaintiffs have allegedly suffered, those answers do not, by any means, establish that fact. Since plaintiffs have apparently chosen to rely on those answers to satisfy their obligation to make a positive showing that a class exists, their showing amounts to little more than speculation.

■ In sum, plaintiffs, who have had the full benefit of, and have not indicated any dissatisfaction with, a lengthy discovery process, have been unable to identify anybody other than themselves who has suffered the same type of discrimination at the hands of defendant that they have allegedly suffered. They have, indeed, each been able to show only that

eleven persons *might* be situated in a position similar to theirs. Under these circumstances, and at this late stage of the litigation, the court cannot say that either plaintiff has satisfied the requirements of Rule 23(a)(1). Page v. Curtiss-Wright Corp., 332 F.Supp. 1060 (D.N.J.1971). *See* Foster v. Mobile County Hospital Board, 398 F.2d 227, 228, n. 1 (5th Cir. 1968); Gerstle v. Continental Airlines, Inc., 50 F.R.D. 213, 219, n. 11 (D.Colo.1970).

Plaintiffs' position is that, as a matter of policy, all Title VII cases alleging "across-the-board" discrimination should be allowed to proceed as class actions until trial if the requirements of Rule 23 (b)(2) are met. Since they allege that defendant has acted in a manner generally applicable to the proposed classes and since they seek declaratory and injunctive relief on behalf of those classes, they contend Rule 23(b)(2) has been satisfied.[1]

In the first place, as the words of the Rule provide, any complaint which attempts to qualify as a class action under Rule 23(b)(2) must first surmount the hurdle imposed by Rule 23(a). Neddo v. Housing Authority of City of Milwaukee, *supra*, 335 F.Supp. 1401. In the second place, the Fifth Circuit has explicitly held that Title VII complaints which attempt to qualify as class actions must satisfy the requirements of Rule 23(a). Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968). Since plaintiffs have failed to satisfy those requirements in the instant cases they may not maintain them as class actions.

■ Plaintiffs are very much concerned, however, that the denial of class action treatment will encourage the continuance of defendant's alleged discriminatory employment practices even if plaintiffs prevail on their individual claims. Their concern is unwarranted. The complaints of both plaintiffs charge defendant with maintaining unlawful employment practices which affect and have affected other female and black employees. Although plaintiffs have failed, during the course of this litigation, to sustain their claims that these alleged unlawful practices have affected a class of persons other than themselves in Rule 23 terms, they may succeed in proving at trial, as Title VII plaintiffs, that they were subject to unlawful employment practices intentionally maintained by defendant which had and have the potential of affecting others similarly situated. If they do, the court has the authority to enjoin such plant-wide practices pursuant to 42 U.S.C. § 2000e–5(g) (1970) which provides in part:

> "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay  .  .  ."

Nothing in Title VII restricts this remedy to class actions.

■ Similarly, as § 1981 plaintiffs, they may succeed in proving at trial that defendant discriminates against its employees on the basis of race. If they do, the court may fashion any of a number of appropriate equitable remedies to vindicate the civil rights of plaintiffs and those similarly situated who might suffer sometime from such discrimination. Sanders v. Dobbs Houses, Inc., 431 F.2d

---

1. Plaintiffs have made absolutely no showing to support the allegations of their complaints that these cases may be maintained as class actions under Rule 23(b)(1).

1097 (5th Cir. 1970), cert. denied, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (1971); Waters v. Wisconsin Steel Works of Int'l Harvester Co., 427 F.2d 476 (7th Cir.), cert. denied, United Order of Am. Bricklayers, etc. v. Waters, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); Lazard v. Boeing Co., 322 F.Supp. 343 (E.D.La.1971). *See* Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). The parties may rest assured that this court would not halt racial discrimination against the two plaintiffs alone if it is established that others may be similarly affected in the future. *See* Jenkins v. United Gas Corp., 400 F.2d 28, 34 (5th Cir. 1968); Potts v. Flax, 313 F.2d 284, 289–290 (5th Cir. 1963).[2]

█ Finally, both plaintiffs seek back pay, costs, and attorney's fees only on behalf of themselves. The grant or denial of class action treatment would not affect the scope of that remedy.[3] In sum, the denial of class action treatment will not adversely affect the range of relief this court may grant if plaintiffs succeed on the merits, but it will protect the rights of other employees of defendant should defendant succeed on the merits. *See* Johnson v. Georgia Highway Express, Inc., *supra*, 417 F.2d 1125–1127 (Godbold, J., concurring specially).

For the foregoing reasons it is hereby ordered that Civil Action No. 14045 and Civil Action No. 14125 may no longer be maintained as class actions.

---

2. In Danner v. Phillips Petroleum Co., 447 F.2d 159, petition for rehearing and rehearing en banc denied, 450 F.2d 881 (5th Cir. 1971) (Tuttle & Wisdom, JJ., and Brown, C. J., dissenting), the Fifth Circuit held that class-wide relief could not be granted where only the merits of an individual Title VII claim had been proved at trial. However, in that case the plaintiff had made no effort either in her complaint or at trial to seek relief on behalf of other female employees. The holding of that case should be restricted to its special facts and should not apply to the instant cases where group relief has been sought from the beginning and may be proved at trial.

3. It is noteworthy that § 2000e–5(g) permits a court to award back pay to *employees* if an intentional unlawful employment practice is proved, and this remedy is not restricted to class actions.