**Nolvert P. SCOTT, Jr., Plaintiff,**

v.

**The UNIVERSITY OF DELAWARE et al., Defendants.**

**Civ. A. No. 74–58.**

United States District Court, D. Delaware.

Nov. 20, 1974.

938

Sheldon N. Sandler, of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

William Poole, John P. Sinclair, James F. Burnett, of Potter, Anderson & Corroon, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

### I. STATEMENT OF FACTS

This is a class action for equitable and legal relief to redress an alleged deprivation of rights, privileges, and immunities secured to plaintiff and the class he seeks to represent under the Constitution and laws of the United States. Specifically, plaintiff seeks an injunction against the University of Delaware and individual defendants barring them from engaging in discriminatory practices with respect to the hiring, discharge, recruitment, promotion, supervision, wages, terms, conditions, and privileges of employment, mandatory relief with regard to reinstatement and promotion, and compensatory and punitive damages. Plaintiff further seeks a declaration of his right and that of the class to employment without discrimination based upon race, and a declaration that the present policies of defendants are violative of the Constitution and laws of the United States. The action is now before the Court on defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (6).

Plaintiff, a black Assistant Professor of Sociology at the University of Dela-

ware since September 1, 1971, was originally employed under a three-year contract. On May 9, 1973, he was informed his contract would not be renewed at its expiration on August 13, 1974. Plaintiff thereafter filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission's regional office, alleging generally that he had been the subject of racial discrimination, and specifically that differential criteria had been utilized in the evaluation of his performance as an instructor vis-a-vis the performance of similarly situated white faculty members in his department. The EEOC subsequently transferred the case to the State Department of Labor. The latter agency failed to act upon the complaint, and subsequently relinquished jurisdiction to the EEOC Regional Office. On April 17, 1974, plaintiff received from the EEOC a right-to-sue-letter informing him that, because the EEOC had not filed suit based on the charge, plaintiff might initiate litigation himself in this Court.

Plaintiff subsequently filed a class action, naming the following defendants: the University of Delaware, the University Board of Trustees, the members of that Board in their individual and official capacities, and various other university officials and faculty members in their individual and official capacities. Plaintiff predicates his claim for relief against each defendant on Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et seq.*), 42 U.S.C. §§ 1981, 1983, and 1985, and the Thirteenth and Fourteenth Amendments to the Constitution.

■ The motion now before the Court seeks dismissal of various of the named defendants from this action, asserting lack of jurisdiction over the subject matter and over some or all of the named defendants, immunity of some or all of the named defendants, and failure to state a legally-cognizable theory of recovery. Because affidavits have been filed with respect to certain issues here-

in, those matters will be treated as a motion for summary judgment. Braden v. University of Pittsburgh, 477 F.2d 1, 6 (3rd Cir. 1973); Pegues v. Mississippi State Employment Serv., 61 F.R.D. 110, 111 (N.D.Miss.1973).

## II. TITLE VII

### A. The EEOC Respondents and the District Court Complaint

Title VII of the Civil Rights Act of 1964 forbids employers and unions to discriminate on the basis of race, color, sex, religion, or national origin. A "person claiming to be aggrieved" under its provisions begins the enforcement process when he files a charge with the Equal Employment Opportunity Commission (EEOC) alleging a violation of those provisions. If the occurrence giving rise to the charge took place in a state "which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice," the EEOC may not act on the charge until at least 60 days have elapsed since the commencement of proceedings under state or local law, unless these proceedings terminated earlier. 42 U.S.C. §§ 2000e–5(b) to (c). If the state or local agency elects to terminate its proceedings, the aggrieved party must file his charge with the EEOC within 30 days of receipt of that notice.

When the aggrieved party files a charge, the EEOC may investigate to determine whether there is reasonable cause to believe the charge is true, and if it finds reasonable cause, attempts to eliminate the unlawful practice through informal methods of conference, conciliation, and persuasion. 42 U.S.C. § 2000e–5(b). If the EEOC is unable to obtain voluntary compliance with Title VII, it may notify the person aggrieved accordingly and inform him that he may at any time within the following 90 days bring a civil action in federal district court. 42 U.S.C. § 2000e–5(f)(1).[1]

---

1. For a general discussion of Title VII, much of which is still applicable notwithstanding amendment of the statute, see Developments in the Law: Employment Discrimination

■ Title VII provides *inter alia* a plaintiff may institute a civil action in federal court against only those employers which were respondents "named in the charge" filed with the EEOC. 42 U.S.C. § 2000e–5(f)(1). This jurisdictional prerequisite is important for two reasons:

> First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law.

Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969). "The conciliation process has several features which recommend it. It may solve problems without the animosities created by coercion; it gives the respondent the chance to explain and possibly justify his conduct before litigation receives widespread public attention; it is less expensive and time consuming than litigation; and a broad relief is available." [2] These policies are satisfied as long as the EEOC is given the *opportunity* to mediate an unlawful employment practice; its failure to act upon this opportunity is immaterial. Miller v. International Paper Co., 408 F.2d 283, 288–91 (5th Cir. 1969); Chastang v. Flynn & Emrich Co., 365 F.Supp. 957, 962 (D.Md.1973).

The record in the instant case indicates the EEOC notified the University of Delaware of the pendency of Dr. Scott's proceeding, mailing a copy of the "Charge of Discrimination" form to the "Executive Officer" of the University. Plaintiff does not allege the identity of the "Executive Officer," or that any other trustee, officer, or employee of the University knew or had reason to know of the notice or the proceeding. He seeks to overcome this deficiency by reference to familiar principles of the law of agency, stating that "notification to a company, labor organization, university, etc., under agency principles, is sufficient to alert the individuals vested with responsibility for its operation."

Plaintiff's agency theory has been rejected where considered, Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 241 (4th Cir.), *cert. denied,* 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967); Butler v. Local No. 4 and Local No. 269, Laborers' Int. U., 308 F.Supp. 528, 531 (N.D.Ill.1969); McDonald v. American Fed'n of Musicians of U. S. and Canada, 308 F.Supp. 664, 669 (N.D.Ill.1970) (mere agency relationship does not, without more, constitute sufficient notice), except where there is a "substantial, if not complete, identity of parties before the EEOC and the court." *Cf.* Chastang v. Flynn & Emrich Co., 365 F.Supp. at 964.

■ It is recognized procedural technicalities should not ban potentially just claims, especially where under the statutory framework, a layman can be expected to initially file the charge with the EEOC. "Consequently, courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity, resolved them in favor of the complaining party." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 461 (5th Cir. 1970). While liberality in construction should be favored, minimum standards of statutory compliance are essential to avoid bypassing of the Commission and the statutory emphasis on voluntary compliance and conciliation. Johnson v. Seaboard Air Line Railroad Company, 405 F.2d 645 (4th Cir. 1968), *cert. denied,* 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969).

In Van Hoomissen v. Xerox Corp., 368 F.Supp. 829 (N.D.Cal.1973), the court had occasion to consider whether plaintiff had complied with the statute. In that case, plaintiff named Xerox Corporation and various of its employees in a suit pursuant to Title VII. In the previously-filed EEOC charge, plaintiff identified only the corporation as the party who had discriminated against

---

and Title VII of the Civil Rights Act of 1964, 84 Harv. L. Rev. 1109 (1971).

2. *Id.* at 1200.

him; factual allegations in the charge identified two other employees as possible Title VII violators, but failed to mention any of the other individuals ultimately named by plaintiff in the lawsuit. The court dismissed the action with respect to all other Xerox officers and employees who were neither named nor otherwise identified in the EEOC charge:

> The Court does not feel that the liberality with which it may construe 42 U.S.C. § 2000e–5(f)(1) stretches so far as to include as defendants in this suit seven persons whose only visible common denominator appears to be their employer—Xerox. Without any further indication by plaintiff as to some other connection between himself and the seven defendants in terms of this suit, it seems inappropriate in this instance to retain jurisdiction over the suit . . ..

*Id.* at 835.

■ The rationale of *Van Hoomissen* is applicable to the instant case. It appears Dr. Scott named only the University of Delaware in his charge filed with the regional EEOC office and that the latter provided notice of the charge only to the Executive Officer of the University. Under the circumstances, it does not appear the individually-named trustees, officers, and employees of the University knew or should have known of the EEOC proceeding or that their conduct might have been the subject of an EEOC inquiry. Accordingly, the Court must dismiss the action filed pursuant to Title VII with respect to each named defendant save for the University itself. While it is recognized that this effectively penalizes plaintiff for an omission which a layman might well be expected to make in completing an EEOC charge form, the Court does not feel plaintiff is unduly prejudiced in that he may still recover the full measure of legal and equitable relief he seeks from the University pursuant to Title VII.

### B. The Scope of the EEOC Charge

■■ Defendants' second argument with respect to the Title VII claim concerns the impermissibly broad nature of the complaint filed with the Court vis-a-vis the charge filed with the EEOC. The courts here have attempted to strike a balance between two competing statutory policies. On the one hand, the scope of a complaint in a Title VII suit must be reasonably related to the charges in the antecedent EEOC charge if the Commission's broad conciliatory function is to be preserved. EEOC v. E. I. du Pont de Nemours & Co., 373 F.Supp. 1321 (D. Del.1974). On the other, the lay-initiated EEOC charge is limited in scope, contemplating only particularized allegations which do not go to underlying discriminatory causes or policies. *See* Sciaraffa v. Oxford Paper Co., 310 F. Supp. 891, 898–900 (D.Me.1970).

■ Given these considerations, the Fifth Circuit in Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970) held that the allowable scope of an individual law suit is not defined by the allegations in the EEOC charge, but rather by "the 'scope' of the EEOC investigation which can reasonably be expected to grow out of" that charge. *Id.* at 466. Under this test, a plaintiff may seek redress for the grievance described in his EEOC charge as well as related incidents or policies of discrimination which are reasonably the subject of the EEOC's relatively broad investigatory and remedial power.[3]

■ In the instant case, although the charge filed with the EEOC related only to "discharge," the complaint filed herein seeks to expand the issues to cover alleged discrimination "on the basis of race and color in hiring, firing, recruitment, promotion, supervision, wages,

---

3. Of course, an effort to conciliate by the EEOC is not in any sense a condition precedent to the charging party's right to seek judicial consideration of his grievance. *See* Miller v. International Paper Co., 408 F.2d 283, 288–91 (5th Cir. 1969).

terms, conditions and privileges of employment by defendants." Defendants argue that this is an impermissibly broad expansion of the complaint, even under the *Sanchez* test. The Court disagrees. If it is assumed that different criteria were used to evaluate plaintiff's qualifications than those criteria applied to similarily-situated white faculty members, it is not unreasonable to believe that differential criteria would have been .employed with respect to hiring, firing, recruitment, promotion, and so forth, and thus would have been properly within the scope of an EEOC investigation. Similar conclusions have been reached in Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891 (D.Me.1970) and Arey v. Providence Hospital, 55 F.R. D. 62 (D.D.C.1972).[4] *See also* Sanchez v. Standard Brands, Inc., 431 F.2d at 462–67; Washington v. T. G. & Y. Stores Co., 324 F.Supp. 849, 855 (W.D. La. 1971).

Accordingly, all of the issues raised in paragraph five of the complaint might reasonably have been the subject of the EEOC investigation .prompted by Dr. Scott's charge and are therefore properly litigable.

### C. Plaintiff's Alleged Noncooperation at the State Agency Level

Defendants' final ground for dismissal of the Title VII claim rests upon an alleged refusal of the plaintiff to cooperate with the Delaware Department of Labor in the prosecution of his grievance. Specifically, defendants refer to a letter

from that agency to the EEOC indicating plaintiff refused to sign the necessary "Charge of Discrimination" form issued by that agency. Plaintiff has, in turn, submitted an affidavit with a copy of the form in question attached evidencing the fact that plaintiff did indeed make the necessary signature.

█ Plaintiff's noncooperation with the state agency, if established, might deprive this Court of jurisdiction over the Title VII claim. *See* DuBois v. ·Packard Bell Corp., 470 F.2d 973 (10th Cir. 1973). However, the fact of noncooperation is, at this point in the litigation, still a genuine issue of material fact by virtue of the parties' conflicting affidavits; accordingly, the issue is not properly resolvable on this motion for summary judgment. Braden v. University of Pittsburgh, 477 F.2d 1, 6 (3rd Cir. 1973).

### III. THE CIVIL RIGHTS AND CONSTITUTIONAL CLAIMS

In addition to his Title VII claims, plaintiff seeks monetary and injunctive relief from the University as well as certain officers and employees thereof pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, and the Thirteenth, Fourteenth, and Fifteenth Amendments to the Constitution.

Defendants seek to disclaim any liability predicated upon these statutory and constitutional provisions for the following reasons: (1) the University of Delaware is an "alterego" of the State of Delaware, and is accordingly im-

---

4. The defendant relies heavily on Kinsey v. Legg, Mason & Co., 60 F.R.D. 91 (D.D.C. 1973). In that case, the district court held a plaintiff who had been denied a position with defendant, and who had filed an EEOC charge alleging racially discriminatory hiring policies, could not subsequently contest defendant's allegedly racially discriminatory policies with respect to the terms and conditions of employment of its existing black employees. This precedent is unpersuasive. The *Kinsey* court previously recognized in Arey v. Providence Hospital, *supra,* that where a plaintiff is not an employee of the defendant at the time of the filing of the

complaint, it is reasonable to assume that the EEOC investigated hiring practices only. However, where the plaintiff had been in the position of a job applicant, had been hired, and was subsequently subjected to discriminatory treatment, "[i]t seems clear that . . . the EEOC would as a reasonable matter, extend their investigations to all areas of employment in which the complainant at one time or another had been exposed, including, of course, the facts and circumstances surrounding the initiation of her employment." 55 F.R.D. at 67. The factual situation presented in *Kinsey* is thus readily distinguishable from the instant litigation.

mune from suit under the Eleventh Amendment; (2) the University is not a "person" as that term has been defined under the substantive provisions of 42 U.S.C. §§ 1981, 1983, and 1985, and 28 U.S.C. § 1343, and thus neither a cause of action nor federal jurisdiction obtain pursuant to these respective statutory provisions; (3) the officers and employees of the University, acting within the scope of their official duties, are immune from suit in their individual capacities under common law principles of official immunity; (4) the complaint does not allege that the executive officers of the University acted in bad faith themselves, and even if their subordinates did so act, the officers cannot be vicariously liable under the doctrine of respondeat superior; and (5) the complaint fails to state a cause of action under 42 U.S.C. §§ 1981, 1983, or 1985.

▄▄▄▄ The first four of these contentions were comprehensively discussed and ruled upon by this Court in Gordenstein v. University of Delaware, Civil No. 74–59 (D.Del., filed Sept. 16, 1974). On a factual record substantially identical to that before the Court in the case *sub judice*, Judge Stapleton held: (1) that the University of Delaware is not immune from suit under the Eleventh Amendment; (2) that the University is a "person" for purposes of 28 U.S.C. § 1343 and 42 U.S.C. § 1983, and is thus amenable to a suit under those statutory provisions; (3) that the scope of the University officials' duties was not clear on the record before the Court, thus precluding a dismissal of those defendants from the

suit under the doctrine of official immunity; and (4) that the officials of the University were not liable for the allegedly wrongful acts of their subordinates under the doctrine of respondeat superior. *Gordenstein* is dispositive of the identical legal issues raised by the defendants in this action. Accordingly, the Court holds that the University may be sued pursuant to sections 1981 and 1983 and that the named officers of the University may not be vicariously liable for the wrongful acts of University employees.[5] A ruling on the liability of the University officers and employees for wrongs allegedly committed in their individual capacities will be deferred until the record is more fully developed.[6]

▄▄▄▄ There remains individual defendants' argument concerning the sufficiency of the section 1981, 1983, and 1985 claims. In the Third Circuit, it is a settled principle that cases brought pursuant to 42 U.S.C. § 1983 must be specifically pleaded in order to withstand a motion to dismiss. Kauffman v. Moss, 420 F.2d 1270, 1275 & n. 13 (3rd Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); Negrich v. Hohn, 379 F.2d 213 (3rd Cir. 1967). Broad, conclusory allegations unsupported by specific factual allegations which implicate particular defendants are not sufficient to state a claim upon which relief may be granted. *Id.* at 215. These principles apply with equal force to actions brought pursuant to 42 U.S.C. § 1985, Fletcher v. Hook, 446 F.2d 14 (3rd Cir. 1971), and 42 U.S.C. § 1981, *cf.* Kauffman v. Moss, 420 F.2d at 1275.

---

5. Although *Gordenstein* did not address the status of the University as a "person" for purposes of 42 U.S.C. § 1981, several cases ostensibly hold that the term "person" has a synonymous meaning in the contexts of §§ 1981 and 1983. Arunga v. Weldon, 469 F. 2d 675 (9th Cir. 1972); Folk v. Wilson, 313 F.Supp. 727 (D.Del.1970). Although plaintiff cites a case which seemingly contraindicates this conclusion, United States ex rel. Washington v. Chester Police Dep't, 294 F. Supp. 1157 (E.D.Pa.1969), that case allowed

suit against a municipal government as a "person" under section 1981 notwithstanding the fact that it did not qualify as a "person" under section 1983. Under either of the foregoing rationales, the University here is amenable to suit under section 1981.

6. This assumes, of course, that plaintiff chooses to amend his complaint to state a claim against these defendants. *See* discussion *infra.*

Plaintiff's complaint contains no specific factual allegations tending to indicate that individual defendants attempted to unlawfully impair plaintiff's contractual relationship with the University, sought to deprive him of constitutional rights, or collectively conspired to accomplish any of these acts. The complaint does state facts indicating plaintiff received 25 to 30 pieces of hate mail from "students and others," and that he was subjected to "other forms of harassment." It indicates that plaintiff was assigned unfamiliar course material, that he was not allowed to utilize University staff or equipment for N.A.A.C.P. activities, and that he was reported by an unnamed student to have been intoxicated on campus and was subsequently subjected to a "University investigation." The complaint alleges racially-motivated student complaints against plaintiff which were afforded disproportionate weight when plaintiff's contract came up for renewal. At best, these factual allegations indicate unlawfully discriminatory activity by an unspecified number of students, and possibly by some unidentified members of plaintiff's department.[7] The complaint in no way implicates any member of the Board of Trustees, the President of the University, or the Vice President for Academic Affairs.

This is not to say that the complaint totally fails to state a civil rights claim. Assuming the allegations in the complaint are true and differential criteria were indeed utilized in the evaluation of plaintiff's performance as an instructor vis-a-vis his fellow white instructors in the Department of Sociology, the complaint, broadly read, states a cause of action against the University under sections 1981 and 1983, even though it is nonspecific with respect to which of the University's employees were chargeable with discriminatory activity. Even under this broad reading, however, the complaint fails to allege facts which indicate unlawful conspiratorial activity by the University or any of its employees, identified or unidentified. Accordingly, the complaint does not state a cause of action against either the University or its named employees pursuant to ' 42 U.S.C. § 1985. *See* Fletcher v. Hook, 446 F.2d at 15–16.

## IV. CONCLUSION

The claims against the individual defendants under Title VII are dismissed. The claims pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 as to the individual defendants and the 1985 claim as to the University will be dismissed unless plaintiff amends his complaint within 10 days of the date of this opinion. Kauffman v. Moss, 420 F.2d at 1276.

Submit order.

---

7. The present complaint names the Chairperson of the Department, one Helen Gouldner, and a Frank R. Scarpetti, whose relationship with the University is unspecified. The complaint does not indicate whether these individuals were instrumental in the evaluation of plaintiff's performance or the non-renewal of his contract; nor does it specify which, if any, other members of the faculty were responsible for the allegedly discriminatory refusal to rehire plaintiff. Hence, although the complaint seems to indicate discriminatory treatment by some members of the faculty, its failure to identify them requires dismissal of the complaint under the teaching of *Kauffman*.