Mary C. SMITH, Carol R. DiMaio and Howard E. Watts, Jr., Plaintiffs,

v.

JOSEPH HORNE COMPANY INC., a Pennsylvania Corporation, Defendant.

Civ. A. No. 75–964.

United States District Court, W. D. Pennsylvania.

Oct. 14, 1977.

Friedman & Friedman, Pittsburgh, Pa., for plaintiffs.

James R. Williams, Jackson, Lewis, Schnitzler & Krupman, New York City, Edward J. Van Allen, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for defendant.

## OPINION

COHILL, District Judge.

### Introduction

This action is before us on plaintiffs' motion to amend their complaint. On August 4, 1975, the plaintiffs, two females and one male, filed their complaint, alleging that the defendant department store had discriminated against them on the basis of sex, thereby violating §§ 703(a)(1) and 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 451, 1343, and 2201.

### Procedure

There are a number of steps to be taken before a plaintiff may file a civil action in court pursuant to the Civil Rights Act of 1964, and that procedure is not easily described.

The victim of an alleged unlawful employment practice must preliminarily file a charge with the Equal Employment Opportunity Commission ("EEOC"). However, where a state or political subdivision has its own law prohibiting unfair employment practices, and establishes an authority to grant or seek relief from such practices, no charge may be filed with the EEOC before the expiration of 60 days after proceedings have been commenced under the state or local law, unless such proceedings have been earlier terminated. 42 U.S.C. § 2000e-5(c).

The charges with the EEOC, however, must be filed within 180 days of the date that the alleged unfair practice occurred, or within 300 days if the plaintiff has filed charges with the state or local authority referred to above. 42 U.S.C. § 2000e-5(e).

The EEOC has a practice known as "deferral," by which charges prematurely brought before it are "deferred," or referred, to the appropriate state or local agency, without being considered as "filed" with the EEOC; this prevents plaintiffs from losing any rights under Title VII because they mistakenly came to the EEOC first. This procedure received the approval of the United States Supreme Court in *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

After the state or local agency has completed its procedures, the EEOC must investigate the charge and make a determination as to whether or not there is reasonable cause to believe the charge is true. If there is not, the charge is dismissed. If the EEOC finds reasonable cause to believe the charge is true, it is required to send the parties a "determination letter" apprising them of its findings and then must attempt to resolve the problem through informal methods of conference, conciliation, and persuasion. 42 U.S.C. 2000e-5(b).

The EEOC may issue a "right to sue" notice to the plaintiff under three circumstances: (1) upon dismissal of a charge by the EEOC; or (2) upon a failure of concilia-

tion; or (3) after the passage of 180 days from the date of the plaintiff's charge being filed with the EEOC. The "right to sue" letter explains to the plaintiff that a civil action may be commenced within 90 days. It is at this point that the plaintiff is allowed to file a complaint in a United States District Court. 42 U.S.C. 2000e-5(f).

## Pertinent Facts

Plaintiff, Mary Smith, was first employed by the defendant department store in 1965. Plaintiffs, Carol DiMaio and Howard Watts, began working for the defendant in 1970. At the time in question, all three were employed in defendant's wig department. On June 29, 1972, Smith and DiMaio filed charges with the EEOC, alleging discrimination by the defendant on the basis of sex in that the defendant was paying Watts (who later was to become a co-plaintiff) more than it was paying Smith and DiMaio for essentially the same work.

On July 8, 1972, Watts was laid off. He alleged that the store let him go to remove the primary male basis of comparison with Smith and DiMaio and also in retaliation for the filing of charges with the EEOC by Smith and DiMaio. On July 8 and 15, 1972, Smith and DiMaio, respectively, filed additional charges with the EEOC, alleging retaliation based on the layoff of Watts. For reasons not apparent from the record, the three plaintiffs subsequently filed the joint complaint in this matter.

On February 28, 1973, the EEOC issued a determination letter that there was reasonable cause to believe that defendant had violated Title VII by failing to pay equal wages to male and female employees performing substantially similar work and that defendant's actions taken against plaintiff Watts constituted a reprisal for the charges filed with the EEOC. On June 10, 1975, the EEOC notified the plaintiffs of their right to institute suit within 90 days therefrom, and on August 4th this suit was commenced.

On February 18, 1975, plaintiff Smith filed another charge with the EEOC alleging retaliation against her for the earlier discrimination charge which she had filed. Smith left the employ of defendant on August 9, 1975. The EEOC did not issue any determination letter regarding Smith's February 18, 1975 charge but on May 18, 1976, the EEOC notified Smith of her right to sue within ninety days.

Nowhere is there an allegation that any of the plaintiffs sought relief from the Pennsylvania Human Relations Commission before coming to the EEOC. The Pennsylvania Human Relations Commission is the state authority established by the Commonwealth of Pennsylvania to seek or grant relief in such matters.

## Motion to Amend

The plaintiffs have moved to amend their complaint as follows:

1. Plaintiffs moved to amend paragraphs, 6, 7 and 8 of the complaint to characterize their job classification as that of "Wig Stylist" and to amend their complaint further by adding a third count to plead hypothetically that if defendant classified the individual plaintiffs differently by job classification, such job classifications were not *bona fide* but were artificially created to permit defendant to compensate the male plaintiff Watts at a higher rate than female plaintiffs Smith and DiMaio, or alternately that defendant's failure to permit the female plaintiffs to function in the same job classification as the male plaintiff was a discriminatory job classification.

This portion of the motion will be granted.

Plaintiffs also moved to amend paragraph 6 of their original complaint to show that Smith is no longer employed by defendant, because of an alleged constructive discharge.

This portion of the motion will be denied.

2. Plaintiffs also moved to amend the complaint by adding a fourth count to state that on February 18, 1975 plaintiff Smith filed with EEOC additional charges averring retaliation against her by the defendant and also to allege that her leaving the employ of defendant on August 9, 1975 was a constructive discharge.

This portion of the motion will be denied.

3. Plaintiffs also wish to attach to the amended complaint certain documentary exhibits which they aver were inadvertently not attached to the original complaint.

This part of the motion will be granted.

4. Not raised by the parties, but on our own suggestion, pursuant to Fed.R.Civ.P. 12(h)(3), we question whether this court has present jurisdiction over this matter in view of the possible failure of the plaintiffs to have filed charges with the Pennsylvania Human Relations Commission prior to filing with the EEOC.

### 1. Job Classifications

Plaintiffs want to amend the complaint to characterize plaintiffs' job classification as "wig stylist" and to plead hypothetically that if defendant classified plaintiffs differently by job classifications these were artificially created to allow the defendant to compensate the male plaintiff at a higher rate than the female plaintiffs, or alternatively, that the defendant's failure to permit the female plaintiffs to function in the same job classification as the male plaintiff was a discriminatory job classification in violation of Title VII.

Defendant avers that such an amendment should not be permitted, arguing that it goes beyond the scope of judicial inquiry in this case since the proposed amendment was not part of the plaintiffs' EEOC charge, investigation, or determination.

The United States Court of Appeals for the Third Circuit has discussed the approach to be adopted when entertaining motions to amend a complaint in civil rights cases. In *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3rd Cir. 1976), the court stated:

> " . . . To accomplish the dual objectives of weeding out frivolous cases in keeping the federal courts open to legitimate civil rights claims, courts should allow liberal amendment of civil rights complaints under Fed.R.Civ.P. 15(a)."

In the present case, this philosophy must be limited to some extent by the scope of judicial inquiry permitted in Title VII cases.

The scope of the judicial inquiry is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394 (3rd Cir. 1976), *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). *King v. Georgia Power Company*, 295 F.Supp. 943 (N.D.Ga.1968) held that allegations in a court complaint filed pursuant to Title VII "may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the commission." 295 F.Supp. at 947. *King* was approved in a 6th Circuit case, *Tipler v. E. I. DuPont de Nemours and Co.*, 443 F.2d 125 (6th Cir. 1971).

Judge Rosenberg of this district in *Equal Employment Opportunity Commission v. Greyhound Lines*, 411 F.Supp. 97 (W.D.Pa. 1976) followed *Sanchez, supra* and also cited *Equal Employment Opportunity Commission v. E. I. DuPont de Nemours and Co.*, 373 F.Supp. 1321 (D.C.Del.1974) affirmed on other grounds 516 F.2d 1297 (3rd Cir. 1975) which put emphasis on the general character of the grievances to which the charge alludes and not to the specific charge.

An examination of the statutory scheme of Title VII makes it apparent that the purpose of filing a charge of discrimination with the EEOC is to trigger the investigatory and conciliatory procedures of that agency and not to function as a lawsuit itself. *Sanchez, supra*. It is only after investigation and failure in an attempt to obtain voluntary compliance with the law that the matter may become the subject of a court action. The subject matter of the civil action is more intimately related to the EEOC investigation than to the original charges filed with EEOC. *Sanchez, supra*. The prime objective of Title VII is to accomplish compliance with the law through conciliation. Obviously only charges investigated can be the subject of such conciliation. The federal courts cannot be used to bypass the EEOC machinery. What happens at the EEOC level is of the utmost

importance. The court action is limited to that range of issues that would have been the subject matter of the conciliation efforts between EEOC and the employer. *King, supra* 947. Hence, two of the jurisdictional prerequisites to a federal court action under Title VII are (1) the filing of a timely charge with the EEOC and (2) receipt and action upon the commission's statutory notice of the right to sue. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

█ The plaintiffs' charge with the EEOC did not allege specifically that defendant discriminated in job classifications, nor did the EEOC's determination letter refer specifically to job classifications. We believe, however, that plaintiffs' proposed amendments alleging discriminatory job classifications are so intimately related to the formal charges that they are well within the scope of what could reasonably be expected to have been investigated by the EEOC. Job classifications are within the general character of the grievances in the plaintiffs' EEOC charge. If it is assumed that plaintiffs Smith and DiMaio were victims of sex discrimination in their employment with the defendant as charged, it is also reasonable to assume that job classifications may have been used as a means of furthering this discrimination or that the alleged discrimination may have been reflected in plaintiffs' job classification, and it is not unreasonable to assume that this aspect of the case would have been included in the EEOC inquiry.

The court in *Scott v. The University of Delaware*, 385 F.Supp. 937 (D.Del.1974) in a case involving racial discrimination stated:

"Given these considerations, the 5th Circuit in *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Circuit 1970) held that the allowable scope of an individual lawsuit is not defined by the allegations in the EEOC charge, but rather by the scope of the EEOC investigation which can reasonably be expected to grow out of that charge. *Id.* at 466. Under this test a plaintiff may seek redress for the grievance described in his EEOC charge as well as related incidents or policies of discrimination which are reasonably the subject of the EEOC's relatively broad investigatory and remedial power.

"In the instant case, although the charge filed with the EEOC related only to discharge, the complaint filed herein seeks to amend the issues to cover alleged discrimination on the basis of race and color in hiring, firing, recruitment, promotion, supervision, wages, terms, condition and privileges of employment by defendants. Defendants argue that this is an impermissibly broad expansion of the complaint, even under the *Sanchez* test. The court disagrees. If it is to be assumed that different criteria were used to evaluate plaintiff's qualifications, then those criteria applied to similarly situated white faculty members, it is not unreasonable to believe that differential criteria would have been employed with respect to hiring, firing, recruitment, promotion, etc. and thus would have been properly within the scope of an EEOC investigation . . ." 385 F.Supp. 942–943 (footnotes and citations admitted)

The court in *Scott, supra* thus interpreted the *Sanchez* test broadly, envisioning both internal and external discrimination as being properly within the scope of an EEOC investigation and therefore allowable in the judicial complaint, even though they both were not included in the original charge with the EEOC.

We will permit the requested amendments with respect to this aspect of the complaint.

## 2. Constructive Discharge

Plaintiffs moved to add a fourth count to their complaint in order to allege that plaintiff Mary Smith was the victim of retaliation by the defendant, was constructively discharged and has been refused reinstatement by defendant. Reference to the alleged constructive discharge was also made in plaintiffs' proposed amendment to Paragraph 6 of the original complaint.

On February 18, 1975, plaintiff Smith had filed a charge with the EEOC in which she alleged retaliation by the defendant against her because of the earlier charges filed by her. The EEOC has not issued any determination as to the existence of reasonable cause to believe that defendant violated Title VII with respect to this charge, but on May 18, 1976, the EEOC did notify Smith of her right to sue within 90 days thereof. Plaintiffs had already commenced this suit on August 4, 1975 within the Title VII time limitations.

On August 9, 1975, Smith terminated her employment with the defendant. It is this termination and the February 18, 1975 retaliation charge which are the bases of Smith's later allegations of (1) constructive discharge and (2) refusal by defendant to reinstate her, which allegations she wants to add as the fourth count to the complaint filed in this action.

Defendant argues that without an EEOC investigation, a determination letter, or efforts at conciliation relative to the alleged retaliation referred to in the February 18, 1975 EEOC charge or covering the alleged constructive discharge on August 9, 1975, Smith cannot now enlarge her judicial complaint based upon those charges since there is no way to ascertain the proper scope of judicial inquiry. We agree.

In the present case plaintiff Smith's alleged constructive discharge occurred on August 9, 1975, six months after the filing of her EEOC charge alleging retaliation and five days *after* filing this complaint. Her allegation of constructive discharge was not (and obviously could not have been) included in any investigation of the retaliation charge filed February 18, 1975 or in any other investigation occurring before August 9, 1975.

■ As stated earlier herein, a timely charge with the EEOC is one requirement for the court's jurisdiction because of the goal of Title VII for the EEOC to have the opportunity to investigate and obtain voluntary compliance with the law. While the EEOC's action or inaction cannot bar suit, the law is clear that EEOC must have had the opportunity to investigate and conciliate after receipt of a charge of discrimination. This is a prerequisite for a plaintiff to file a complaint in the District Court.

■ Since the EEOC cannot have had the opportunity to investigate and conciliate events occurring subsequent to the February 18, 1975 charge filed with it, allegations regarding incidents occurring after the EEOC charge and after the filing of the complaint do not meet the jurisdictional prerequisite to this federal court action.

This portion of the Motion to Amend will be denied.

### 3. *Exhibits*

Plaintiffs also move to amend their complaint to include seven exhibits letters A through G as being material to this litigation and as being inadvertently left out of the original complaint but referred to therein. Exhibits A and E are EEOC determination letters. Exhibit B, C, D and G are EEOC right to sue letters. Exhibit F is an EEOC letter, indicating that the investigation of plaintiff Smith's retaliation charge had not been completed.

Defendant argues that Exhibits A, E and F, the EEOC determination letters, are extraneous and immaterial to this litigation. This argument is somewhat inconsistent with defendant's argument elsewhere that the scope of a private litigant's action under Title VII may not exceed the scope of the EEOC's determination letter.

■ Pleading is intended only to inform opposing parties of what is claimed and the grounds upon which the claim rests. *Sunstrand Corp. v. Standard Kollsman Industries, Inc.,* 488 F.2d 807 (7th Cir. 1973).

Attaching exhibits to which the complaint refers is a common practice. The complaint and its attachments are not evidence; we do not therefore have to consider whether or not these exhibits will be admissible at trial.

■ We do not believe that plaintiffs' exhibits are outside the guidelines of Fed.R.

Civ.P. 8. We will allow plaintiffs' exhibits A through G to be added to their complaint.

#### 4. *Jurisdiction*

One matter must be considered which has not been raised by either side. Fed.R.Civ.P. 12(h)(3) states:

"(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

We will therefore raise the issue at our own "suggestion."

The Act states in part, 42 U.S.C. § 2000e-5(c):

"(c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated . . . "

Pennsylvania has the Pennsylvania Human Relations Commission established to consider charges such as these. 43 P.S. 951, *et seq.*, as amended.

There is no allegation in the complaint that this condition precedent was met by the plaintiffs or by the EEOC acting on behalf of the plaintiffs as sanctioned by the Supreme Court in *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

 It would appear therefore either that this court has no jurisdiction over the subject matter because the plaintiffs have failed to comply, or, if there has been compliance, the complaint should contain such an allegation.

We will retain jurisdiction for a period sufficient for plaintiffs to advise the court that they have sought redress with the Pennsylvania Human Relations Commission, or to seek state redress and to submit evidence of such action to this court.

An appropriate order will be entered.

### ORDER

AND NOW, to-wit, this 14th day of October, 1977, after hearing arguments, careful study of the briefs filed, and due consideration of plaintiffs' Motion to Amend Complaint and for the reasons set forth in the Opinion filed herewith,

IT IS HEREBY ORDERED AND DECREED that:

1. The Motion to Amend paragraphs 6, 7 and 8 of the original complaint is granted except that the Motion to Amend said paragraph 6 to allege a constructive discharge of plaintiff Smith is denied.

2. The Motion to Amend the Complaint by adding Count 3 is granted.

3. The Motion to Amend the Complaint by adding a fourth Count referring to alleged retaliation against and constructive discharge of plaintiff Smith is denied.

4. The Motion to attach certain documentary exhibits to the complaint is granted.

IT IS FURTHER ORDERED that the amended complaint shall reflect what action, if any, plaintiffs have initiated with the Pennsylvania Human Relations Commission in connection with these matters.