**Jacklin GERAC–OGASHI, Plaintiff,**

v.

**IBERIA GENERAL HOSPITAL, Defendant.**

Civil Action No. 96–1604.

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Nov. 8, 1996.

Jacklin Gerac–Ogashi, New Iberia, LA, Pro Se.

*JUDGMENT*

HAIK, District Judge.

Having reviewed the Report and Recommendation Suggesting Dismissal of Claims for Lack of Subject Matter Jurisdiction and the complete record including the objection filed by the plaintiff on October 18, 1996, I conclude that the recommendation contained

within the Report and Recommendation is well supported by the law and the facts.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that plaintiff's following claims are **DISMISSED**: (1) plaintiff's allegations of widespread racial animus by defendant towards all African–American nurses; (2) defendant's denial of promotion; (3) transfer harassment; (4) staff policy discrimination in favor of Caucasian nurses over African–American nurses; (5) denial of opportunities for advancement through clinical programs and the posting or non-posting of advancement positions for both plaintiff and other African–American nurses; (6) non-enforcement of hospital policies with respect to Caucasian employees; (7) allegations of forcing plaintiff to work shifts for Caucasian employees who were participating in quality control seminars and then penalizing plaintiff for her lack of participation in such seminars; (8) defendant's alleged use of any variable to terminate or deny further employment for plaintiff and other African–Americans; and (9) forcing plaintiff to train inexperienced Caucasian nurses who were, in turn, placed in supervisory positions over the plaintiff, as the court does not have subject matter jurisdiction to entertain these claims.

For purposes of clarification, **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the aforementioned ruling thus limits plaintiff's further pursuit of this case to the issues of: (1) her termination based upon leaving work early; and (2) whether or not her termination was based upon racial discrimination.

### REPORT AND RECOMMENDATION SUGGESTING DISMISSAL OF CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION

METHVIN, United States Magistrate Judge.

In the course of reviewing plaintiff's motion for appointment of counsel, it came to the attention of the undersigned that the court lacks subject matter jurisdiction to entertain several of plaintiff's claims. It is therefore recommended that these claims be dismissed *sua sponte.*

### BACKGROUND

Plaintiff, Jacklin Gerac–Ogashi, was discharged from her job as a registered nurse ("RN") at the defendant hospital on December 12, 1994. Plaintiff filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC") which resulted in a finding of no discrimination. However, plaintiff received a right to sue letter and filed this instant lawsuit on July 3, 1996.

On July 3, 1996, plaintiff also filed a motion for appointment of counsel under section 704(f) of Civil Rights Act.[1] On July 18, 1996, I ordered plaintiff to file a written statement setting forth any additional information establishing that she was discriminated against, and providing the names, addresses and telephone numbers and a brief summary of the anticipated testimony of all witnesses.[2] Additionally, I ordered that the Equal Employment Opportunity Commission (EEOC) file a copy of their investigative file.

In her EEOC grievance, plaintiff claimed:

I.    On December 12, 1994, I was wrongfully discharged from my job as an RN.

II.    Bonnie Lebit, RN in charge of the Unit and the Vice President of Nursing, told me that I was terminated for leaving my station early.

III.    I believe that I have been discriminated agianst (sic) because of my race, Black in violation of Title VII of the Civil Rights Act of 1964, as amended, in that I was terminated from my job so that a White could take my place.[3]

On May 31, 1996, the EEOC sent plaintiff a "dismissal and notice of rights" which informed plaintiff that after an investigation into her claims, the commission was unable to conclude that the information obtained

---

1.  Rec.Doc. 4.

2.  Rec.Doc. 5.

3.  Plaintiff EEOC Charge of Discrimination, p. 1.

established violations of the statutes.[4] This dismissal also noticed plaintiff that, if she so chose, she could pursue her claims against the defendant in federal court.[5]

Plaintiff then filed the instant complaint. The complaint, however, significantly expanded upon plaintiff's original EEOC claims. Whereas her EEOC claim alleged unlawful discharge only, plaintiff's instant complaint states in pertinent part,

All black RN forced to quit or terminated @ the same time and replace w/ new graduate white RN. Denial of promotion, transfer harassment (harsh and unusual discipline) White nurse treated one way black nurse another. With black staff policy + procedure not followed.[6] Plaintiff further complained that white nurses were given preferential schedules, the pay scales between white and black nurses were different, and she was discriminatorily harassed through disciplinary measures that would not have been taken against white nurses.[7]

After receipt of the complaint, the undersigned issued a Ruling wherein plaintiff was ordered to supply the court with any additional information in her possession which would establish that she was discriminated against by the defendant.[8] In response to this order, plaintiff enumerated her claims of racial bias by defendant:

Plaintiff alleges that defendant denied her and other blacks opportunities for advancement through clinical education programs, posting or non-posting of advancement positions, mandating that black employees invariably follow hospital policy, as they should, but not enforcing such policy against whites, forcing plaintiff to work shifts for white personnel who participate in quality control seminars, then docking plaintiff's record for not participating in such seminars, while using any variable, including personal ill-

ness, or discretionary rulings concerning policy to terminate or deny further employment for plaintiff and other blacks, while finally, imposing the final indignity of forcing plaintiff to train inexperienced white nurses to immediately be placed in a supervisory position over the plaintiff.

Accordingly, plaintiff argues that defendant hospital's actions involve employment practices that may be seen as facially neutral in their treatment of different groups but the "axe" in fact falls more harshly in a pattern on blacks at the hospital, including plaintiff, than on whites and cannot be justified by business necessity.[9]

After comparing plaintiff's EEOC grievance with her subsequent complaint and articulation of her claims, I find that plaintiff expanded the original scope of her claims. The court's task, therefore, is to determine whether it has jurisdiction over these expanded claims. In the EEOC claim, plaintiff stated: (1) she was wrongfully terminated, and (2) this termination was the result of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, so her job could be given to a Caucasian.[10] Based upon this claim, the EEOC investigated plaintiff's violation of hospital policy when she left work early, plaintiff's alleged failure to attend to a patient, plaintiff's allegation that she was replaced and possible disciplinary incidents during the period of the investigation. The EEOC could not find evidence to support plaintiff's allegation that race was a factor in her discharge.

In the instant complaint, plaintiff supplemented these claims to include (1) allegations of widespread racial animus towards all African–American nurses, (2) denial of promotion, (3) transfer harassment, and (4) staff policy discrimination in favor of Caucasian nurses over African–American nurses.[11] These allegations were then augmented by

---

4.  EEOC's Dismissal and Notice of Rights, p. 1, attached to plaintiff's Complaint.

5.  Id.

6.  Plaintiff's Complaint, p. 1.

7.  Id. at p. 2.

8.  Rec.Doc. 5.

9.  Id. at 3.

10.  See attachment No. 1.

11.  Plaintiff's Complaint, p. 1.

plaintiff in her brief in support of her request for appointment of counsel wherein she further claimed: (1) defendant denied her and other African–Americans opportunities for advancement through clinical programs and the posting or non-posting of advancement positions, (2) non-enforcement of hospital policies with respect to Caucasian employees, (3) forcing plaintiff to work shifts for Caucasian employees who were participating in quality control seminars and then penalizing plaintiff for her lack of participation in such seminars, (4) defendant's use of "any variable" to terminate or deny further employment for plaintiff and other African–Americans, and (5) forcing plaintiff to train inexperienced Caucasian nurses who were, in turn, placed in supervisory positions over the plaintiff.[12]

### CONTROLLING LAW

The court must determine whether it has jurisdiction to hear these additional claims. The Fifth Circuit ruled, "[W]e have held" that "a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.' This is because "the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation"." *National Association of Government Employees, et al. v. City Public Service Board of San Antonio, Texas, et al.*, 40 F.3d 698, 711 (5th Cir.1994), citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970). The Court further stated,

> "The EEOC charge, enlarged only by such EEOC investigation as reasonably proceeds therefrom, fixed the scope of the charging party's subsequent right to institute a civil suit. The suit filed may encompass only 'the discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge'."

*Id.*, 40 F.3d at 711–12, citing *King v. Seaboard Coast Line R. Co.*, 538 F.2d 581, 583 (4th Cir.1976) (footnote and citation omitted); *See also Johnson v. General Electric*, 840

F.2d 132, 139 (1st Cir.1988) (suit may include "reasonably related" noncharged "new acts occurring during the pendency of the charge before the EEOC") (emphasis added); *Moore v. Sunbeam Corporation*, 459 F.2d 811, 826 & n. 38, 828 (7th Cir.1972); *Smith v. Joseph Horne Co., Inc.*, 438 F.Supp. 1207, 1213 (W.D.Pa.1977); *Hubbard v. Rubbermaid, Inc.*, 436 F.Supp. 1184, 1190–91, 1193–94 (D.C.Md.1977); 2 Larson, Employment Discrimination § 49.11(c)(1) at 9B–16 ("if an EEOC investigation has actually been conducted, most courts hold that the scope of the complaint is limited to the actual scope of the investigation").

### ANALYSIS

■ Plaintiff's instant suit may only encompass the discrimination alleged in the initial charge or that investigated by the EEOC. After review of the EEOC investigative report, supplied to the court as a result of my July 18, 1996 order, I find that the EEOC limited its investigation to the issues of (1) plaintiff's leaving early on December 12, 1994, (2) the unattended patient, (3) the fact that plaintiff was not replaced (either by an African–American or Caucasian nurse), (4) the lack of disciplinary action against any other nurse during the pendency of the investigation, and (5) the lack of support for the allegation that race was a factor in plaintiff's discharge.[13] As plaintiff's additional claims were not addressed by the EEOC, plaintiff must limit any further action in this suit to those issues addressed in her grievance with the EEOC and those described by the EEOC in their correspondence of May 10, 1996.

■ Rule 12(h)(3) of the Federal Rules of Civil Procedure states, "Whenever it appears by suggestion of the parties **or otherwise** that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3) (emphasis added). It is the duty of the court to determine, *sua sponte* whether it has jurisdiction over any case before it. *Griffith v. Johnston, Individually and as Commissioner of the Texas Department of Human Services*, 899 F.2d

---

12. Rec.Doc. 6, pp. 2–3.

13. See attachment No. 2.

1427, 1429 (5th Cir.1990), *see also Bender v. Williamsport Area School District,* 475 U.S. 534, 541–541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Therefore, after review of the plaintiff's initial claims, the investigation conducted by the EEOC, plaintiff's instant complaint, her supplemental brief, the controlling case law and the controlling rule of procedure, I find the court lacks jurisdiction to entertain plaintiff's additional claims.

For the foregoing reasons, it is recommended that plaintiff's claims be limited to those alleged in her initial EEOC grievance and any subsequently alleged claims be **DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir.1996).**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ FEPA EEOC | 27095 1741 |

Louisiana Comm. On Human Rights and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Jacklin G. Ogasho | (318) 367-3054 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 755 N. Pershing St., New Iberia, LA 70560 | | 07/21/57 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| New Iberia General Hospital | Cat B (101-200) | (318) 364-0441 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2315 E. Main St., New Iberia, LA 70506 | | 045 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 12/12/94 | 12/12/94 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I.   On December 12, 1994, I was wrongfully discharged from my job as a RN.

II.  Bonnie Lebit, RN in charge of the Unit and the Vice President of Nursing, told me that I was terminated for leaving my station early.

III. I believe that I have been discriminated agianst because of my race, Black in violation of Title VII of the Civil Rights Act of 1964, as amended, in that I was terminated from my job so that a White could take my place.

☐ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I declare under penalty of perjury that the foregoing is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

08/13/95
Date          Charging Party (Signature)

EEOC FORM 5 (Rev. 06/92)

RESPONDENT'S COPY

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New Orleans District Office**

701 Loyola Ave., Suite 600
New Orleans, LA 70113
PH: (504) 589-2329
TDD: (504) 589-2958
FAX: (504) 589-6861
FNO-ENF T1

Jacklin Ogasho
755 N. Pershing Street
New Iberia, LA 70560

Re: Charge Number 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
    Iberia General Hospital & Medical Center

Dear Ms. Ogasho:

The purpose of this letter is to summarize the evidence upon which
the District Director will make a determination on the merits of
your charge.

Record evidence indicates that you violated hospital policy and
specific instructions from your supervisor when leaving work early.
You were granted permission to leave early if you could get a
replacement. Evidence of record reflects that you handed a note to
the replacement charge nurse, Mecca Lowery (White), indicating that
you had to leave early. A patient under your care was left waiting
for medication. You had instructed a subordinate nurse to advise
Mecca Lowery of the situation. By the time notification was made
of the patient's needs, the patient had suffered pain needlessly
and had been put back to bed in holding. Record evidence indicates
that you were not replaced. No other RN was discharged or
disciplined during the period of the investigation. Evidence does
not support you allegation that race was a factor in your
discharge.

Based on this evidence, a finding of "no violation" is proposed.

A Dismissal and Notice of Rights will be issued to you based on the
evidence described above. You will have 90 days from your receipt
of the Dismissal and Notice of Right, EEOC Form 161, to pursue this
matter on your own in Federal District Court if you decide to
pursue this matter further.

                                        Sincerely,

5/10/96                                 Lois S. Madison
Date                                    Lois S. Madison
                                        Investigator

LM/lsw/4:1741DI

**Equal Employment Opportunity Commission**

CERTIFIED MAIL # P 324 413 384

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jacklin Ogasho. 755 W. Pershing Street New Iberia, LA 70560 | From: | EEOC 701 Loyola Avenue, Suite 600 New Orleans, LA 70113-9936 |
|---|---|---|---|

[ ] *On behalf of a person aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. 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 | EEOC Representative Clarence Morgan, Supervisory Investigator | Telephone No. 504/589-2041 |
|---|---|---|

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[ ] The facts you allege fail to state a claim under any of the statutes enforced by the Commission.

[ ] Respondent employs less than the required number of employees.

[ ] Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ] You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[ ] The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last know address.

[ ] The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[X] The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] Other *(briefly state)*

### – NOTICE OF SUIT RIGHTS –

[X] **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in U.S. District Court. If you decide to sue, you must sue <u>WITHIN 90 DAYS</u> from your receipt of this Notice; otherwise your right to sue is lost.

[ ] **Age Discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in U.S. District Court. If you decide to sue, you must sue <u>WITHIN 90 DAYS</u> from your receipt of this Notice; otherwise, your right to sue is lost.

[ ] **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

I certify that this notice was mailed on the date set out below.

On behalf of the Commission

5/31/96
*(Date Mailed)*

Patricia T. Bivins, District Director

Enclosures
Information Sheet
Copy of Charge

cc: Respondent(s) Iberia General Hospital & Medical Center

EEOC Form 161 (Test 5/95)

## Iberia General
### Hospital and Medical Center

*"Advanced Technology in Caring Hands"*

Bonnie Labit, RN
2315 East Main Street
New Iberia LA 70560

TO WHOM THIS MAY CONCERN:

I spoke with one of the RN representatives over the phone concerning the situation below and was told to send written information.

Staff involved: Jacklin Ogashi, RN - Charge Nurse on the 7-3 shift; Jennie Bashay, RN - Staff Nurse on the 7-3 shift; Mecca Lowery, RN - Charge Nurse on the 3-11 shift; Janice Terrell, RN - Staffing Coordinator; Betty Decuir, LPN II - 7-3 Staff Nurse.

Problem:  Jacklin Ogashi, RN, left her shift early knowing that a patient from her unit was in CT scan and needed medication IVP.  She did not follow the supervisor's instructions.

Procedure for report on our Med-Surg unit:  The staff nurses tape record report.  Report starts a quarter till the hour.  The staff who tape report return to the report room when the tape is finished to give updated information or answer questions.  The charge nurse currently on the unit is the responsible charge nurse until report is completed.  Example:  7-3 staff nurses tape report. 3-11 charge nurse and staff begin report at 1445.  The report may be completed at 1515.  The charge nurse for the 7-3 shift is responsible until all questions are asked and answered.

Situation that occurred 12/12/94:  At approximately 1445 on 12/12/94 Jacklin Ogashi, RN, asked Mrs. Jennie Bashay, RN, to relieve her as charge nurse.  Mrs. Bashay informed her that she could not due to the fact that she had a patient assignment and had recently received an admit.  Jacklin then called Janice Terrell, RN, Staffing Coordinator, and asked her if she could leave early.  Janice Terrell informed her that she could if Mecca Lowery, RN, was willing to assume the charge nurse duties at that time.  Mecca Lowery states that Jacklin handed her a note stating she was leaving early to pick up a child from school.  There was nothing written on the note concerning charge nurse responsibility and no verbal communication transpired.

At approximately 1450, Betty Decuir, LPN II, informed Jacklin that one of her patients (Room 268) who was in CT scan, needed Valium IVP.  She had just received the order.  The patient was restless, uncomfortable and anxious.  Jacklin told Betty that she was to inform Mecca Lowery.  Jacklin left the unit.

Report was in progress at this time.  Betty stood outside the report room until report was finished; and as soon as it was, she informed Mecca that the patient needed the Valium.  Mecca went directly to CT scan.  The patient had been taken off the table by CT personnel and was put back to bed in holding because he had been on the table for approximately 35-45 minutes and was very uncomfortable.

Conclusion:  Jacklin did not follow the specific instructions of the staffing coordinator.  She left no one in charge for the rest of the shift.  She delegated to an LPN what she should have done herself.  She knew the patient needed the medication and abandoned the patient.  The patient suffered needlessly because of her actions. Jacklin was conferenced and terminated from our facility.

I would appreciate your comments in this situation.  My direct phone number is 318-374-7525 or mail material to me c/o Medical-Surgical Unit.  Thank you for your time and consideration.

Bonnie Labit, RN
Department Director
Medical-Surgical Unit
Iberia General Hospital & Medical Center

2315 East Main Street • P. O. Box 13338 • New Iberia, Louisiana 70562-3338 • (318) 364-0441

# Iberia General
### Hospital & Medical Center

2315 East Main Street
New Iberia, Louisiana 70560

·January 30, 1996

P.O. Box 13338
New Iberia, Louisiana 70562-3338

17645

Ms. Lois Maddison
EEOC
New Orleans District Office
701 Loyola Avenue, Suite 600
New Orleans, LA 70113

SENT VIA FACSIMILE: (504) 589-6033

RE: Discrimination Charge
Title VII of the Civil Rights Act of 1964
Charge Number: 270951741
Charge Party: Jacklin G. Ogashi

Dear Ms. Maddison:

This is in response to your correspondence we received ·1/23/96, dated 1/17/96.

1)  Dismissal policy is attached.

2)  Mrs. Ogashi was terminated because of the severity of her actions. There are also other conference reports on files. Copies of these attached.

    Approval of the decision to discharge Charging Party was made by the Executive Director's assignee, Pam Judice, RN, Chief Operating Officer. She is Caucasian.

3)  Mrs. Ogashi was disciplined in accordance with the dismissal policy (see attached). She was given the opportunity to rebut the reasons and explain her position. She gave no explanation. At no time on 2/12/94 or during this conference did she state that her daughter had an injury at school and had left her patient for a personal emergency. We suggest that your office contact the Iberia Parish School Board Office to verify this information.

4)  Discipline records are attached. Please note Mrs. Ogashi refused to sign these records except her evaluation.

---

Switchboard
(318) 364-0441

Direct Line
(318) 374-_____·

Fax
(318) 374-_____

·D3

5) No disciplinary actions from 6/1/94 to 6/30/95 were taken against persons in Charging Party's job category or in equal job categories in the Nursing Department.

Should you need additional information, please let me know.

Best Regards,

Judy Broussard
Human Resources Ass't.

Attachments